No. 69,393

In the Matter of BRADLEY A. PISTOTNIK, *Respondent.*
(864 P.2d 1166)

 Opinion filed December 10, 1993. 

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for petitioner.

*Michael A. Barbara,* of Topeka, argued the cause for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against Bradley A. Pistotnik, an attorney admitted to the practice of law in Kansas. Two formal disciplinary complaints, case No. B5344 and case No. B5357, were brought against Pistotnik based on a pattern of repeated criminal offenses and on his conduct in connection with a personal injury action. A hearing panel of the Kansas Board for Discipline of Attorneys (Board) found that Pistotnik violated MRPC 8.4(b), (d), and (g) (1993 Kan. Ct. R. Annot. 347) (misconduct) in connection with case No. B5344, and MRPC 1.3 (1993 Kan. Ct. R. Annot. 263) (lack of diligence), MRPC 1.4 (1993 Kan. Ct. R. Annot. 267) (lack of communication), and MRPC 8.4(c) and (g) (misconduct) under case No. B5357. The panel also found that Pistotnik's conduct in connection with Count I of the second complaint may give rise to a violation of MRPC 4.1(a) (1993 Kan. Ct. R. Annot. 327) (untruthfulness in statements to others).

The panel considered evidence in mitigation and unanimously recommended that Pistotnik be disciplined by suspension from the practice of law for a period of one year under Supreme Court Rule 203(a)(2) (1993 Kan. Ct. R. Annot. 162). Pistotnik has filed exceptions to the conclusions of law and the discipline recommended. On October 22, 1993, Pistotnik filed a motion to consider letters from seven Wichita members of the Kansas Bar written to support his application for admission to the Missouri Bar in 1991. Pistotnik does not take exception to the panel's findings of fact.

We have examined the record and find substantial competent evidence to support the panel's findings of fact as modified in Finding 2(d) (case No. B5344) and the conclusions of law:

"CASE NO. B5344

"FINDINGS OF FACT

. . . .

"1. Respondent is an attorney at law. . . .

"2. In March of 1990, Respondent applied to be admitted to practice law on grounds of reciprocity in the State of Missouri. In the application for admission to practice, Respondent was asked to provide information regarding criminal complaints filed against him. Respondent identified the following criminal charges and/or convictions:

"(a) The Respondent was convicted of Public Intoxication in Indianapolis, Indiana, in August of 1979 and fined $47.00.

"(b) The Respondent was charged with disorderly conduct resulting from a fight with a fellow law student at the University of Kansas in 1979. The matter was dismissed by the City Prosecutor of Lawrence, Kansas, on or about November 17, 1979.

"(c) The Respondent was charged with driving under the influence of alcohol on September 6, 1986, in Wichita, Kansas. The matter was disposed of by diversion agreement and ultimately was formally dismissed after Respondent complied with the conditions of his diversion agreement.

"(d) The Respondent was charged with three counts of battery in December of 1987 arising out of a fight in a Wichita night club after three men made advances to his ex-wife. Respondent pled no contest to [one count] of battery and a reduced charge of disorderly conduct and was fined $100.00 and placed on probation by the Sedgwick County District Court on August 29, 1988. [During oral argument, counsel for the Disciplinary Administrator stated that the findings should reflect one count of battery and one count of leaving the scene rather than two counts on each charge. We have done so in this section as well as in section (f) below.]

"(e) In January or February of 1988, Respondent was charged with battery of a former client. The case was tried in the Wichita Municipal Court and respondent was acquitted.

"(f) On May 9, 1988, respondent pled no contest to [one count] of leaving the scene of an automobile accident and paid a fine of $200.00. His driver's license was temporarily restricted for 90 days by the Wichita Municipal Court. The civil claim arising from the accident was later settled by his insurance carrier, State Farm, for approximately $12,000.00.

"(g) In May of 1988, Respondent was charged in Butler County District Court for an alleged terroristic threat against a former secretary. The charge was dismissed with prejudice in Respondent's favor.

"3. At the time of his application to the Missouri Bar in March of 1990, Respondent represented he had obtained psychological counseling with Dr.

John Valusek in Wichita, Kansas, beginning in 1988. He offered a letter to the Missouri Bar from Dr. Valusek in March of 1990 that his prior abuse of alcohol and emotional problems had been resolved through counseling.

"4. Subsequent to the filing of Respondent's application with the Missouri Bar, he has been convicted of two additional misdemeanors as follows:

"(a) On July 26, 1991, Respondent pled guilty to Disturbing the Peace in violation of Ordinance No. 26.13 in the case of *City of Kansas City, Missouri v. Bradley Pistotnik*, filed in the Circuit Court of Jackson County, Missouri. The disturbing the peace charge was reduced from the original charge of inflicting bodily injury in violation of Ordinance No. 26.13.2.

"(b) On December 5, 1991, Respondent was convicted by a jury of Class B Misdemeanor Battery in *State of Kansas v. Bradley A. Pistotnik*, Case No. K-67383, filed in Johnson County, Kansas, arising from charges in violation of K.S.A. 21-3412.

"Both of the above charges arose out of a domestic dispute with his second ex-wife. Respondent was ordered to be imprisoned for a period of six months and to pay costs by the Honorable William A. Cleaver, District Court Judge in Case No. K-67383 on or about April 10, 1991. Respondent served ten days in jail and was then granted probation for a period of 24 months beginning on or about April 21, 1992.

"5. On or about July 14, 1992, Respondent was granted permission in Case No. K-67383 to modify his probation to allow him to transfer his residence to the State of Florida. Respondent remains under probation with the State of Kansas and resides in the State of Florida.

## "CONCLUSIONS OF LAW

"Respondent's actions and behavior do amount to a violation of MRPC 8.4(b)(d) & (g). While the charges and convictions against Respondent which occurred before March 1, 1988, are illustrative of his long-standing pattern of behavior problems, they are remote in time and the panel finds no violation of Canon 1 and that claim is dismissed.

## "CASE NO. B5357
## "FINDINGS OF FACT

. . . .

"1. On May 1, 1988, Martha Newman was injured in an automobile accident in Overland Park, Kansas. Ms. Newman retained the Respondent to pursue a personal injury claim for her.

"2. On November 22, 1989, Alan Lundquist, subrogation representative of American Family Insurance Company, wrote to Respondent to inquire whether he was willing to protect the company's personal injury protection lien of $4,146.00 on Martha Newman for an attorney's fee of one-third or $1,382.00.

"3. On December 5, 1989, Respondent wrote to Mr. Lundquist and stated he was agreeable to protecting American Family's personal injury protection lien at the rate of one-third recovery. Respondent further advised Mr. Lundquist if he had questions to contact Respondent.

"4. Respondent filed a personal injury action on Ms. Newman's behalf entitled *Martha Newman v. David W. Jordan*, Case No. 90C4496 in the District Court of Johnson County, Kansas, in April of 1990. The Petition sought damages for pain and suffering, mental anguish, bodily injury, medical expenses, loss of time, economic loss, lost wages, permanent disability and loss of consortium.

"5. Respondent filed a Response to the Request for Statement of Monetary Damages on behalf of Ms. Newman in which plaintiff requested a total of $200,000.00 in damages itemized as follows:

| | |
|---|---|
| Personal Injuries | $ 30,000.00 |
| Pain and Suffering | $ 40,000.00 |
| Temporary Disability | $ 25,000.00 |
| Permanent Disability | $ 35,000.00 |
| Loss of Wages or Income | $ 40,000.00 |
| Loss of Consortium | $ 30,000.00 |

"6. Both parties engaged in discovery by serving Interrogatories and Requests for Production.

"7. On or about August 3, 1990, Ms. Newman's case was placed on the Johnson County District Court's dismissal docket. The Notice of Dismissal dated August 3, 1990, was placed in Respondent's firm's assigned Johnson County Courthouse mailbox. The Notice of Dismissal also reflected a Certificate of Mailing dated August 17, 1990, to counsel by Barbara Holman, Chief Clerk of the District Court.

"8. The Respondent failed to reply to the Notice and Ms. Newman's case was dismissed on September 7, 1990.

"9. On March 13, 1991, Mr. Lundquist wrote to Respondent and requested information regarding the status of Ms. Newman's case. Respondent did not reply to this inquiry.

"10. On March 19, 1991, Respondent made a request to Kenneth E. Holm of Boddington & Brown, Chartered, Kansas City, Kansas, counsel for defendant, David W. Jordan, to stipulate to reinstatement of Ms. Newman's case. Defense counsel refused to allow the case to be reinstated because the underlying two (2) year statute of limitations had expired and because more than six (6) months had passed since the case was dismissed for lack of prosecution.

"11. On or about March 21, 1991, Respondent called Ms. Newman and asked her to come to his office to discuss the case. Ms. Newman went to the Respondent's office and was provided with a letter explaining the status of her case. In the letter, Respondent stated to Ms. Newman that the Johnson County District Court had filed by computer a dismissal of her case for lack of prosecution and his office did not receive any notice of the Court's intent to dismiss. Respondent further indicated the Court did not comply with Rule 6 of the Johnson County District Court rules and suggested Ms. Newman had the option of filing a motion to have the dismissal set aside and place the case back on [the] docket. As another alternative, Respondent indicated in his letter to Ms. Newman that she could let her claim

be dormant and his firm would be willing to pay her $4,000.00. He further advised her American Family held a PIP lien in the amount of $4,146.00 and his firm would be responsible for payment of the lien and would hold her harmless for the same if she would sign a final release of any and all claims she had against the firm. Also present during the meeting with Ms. Newman was Respondent's law partner, Robert Gould.

"12. On that same day, March 21, Ms. Newman accepted $4,000 in cash from Respondent and executed a Release prepared by Respondent and witnessed by Mr. Gould. The Release indicates that the settlement will be confidential. It further indicates Ms. Newman was advised of her right to have independent counsel review the Release and she waived that right.

"13. On July 11, 1991, Alan Lundquist wrote the Respondent and by second request asked for a status report on Ms. Newman's litigation. Respondent did not reply to this inquiry.

"14. On July 25, 1991, Mr. Lundquist wrote to Respondent and again requested a status report. By letter dated August 7, 1991, Respondent replied to Mr. Lundquist and stated 'the matter was dropped and no payments have been obtained from the tortfeasor to Ms. Newman. Therefore no subrogation claim can be repaid.'

"15. The Respondent misled American Family in his correspondence to them by stating Ms. Newman's case had been dropped when it had been dismissed for lack of prosecution. Respondent failed to inform American Family that he had agreed with Ms. Newman to reimburse American Family for its PIP lien and had agreed to indemnify Ms. Newman for any claims that American Family might make against her. Respondent failed to protect American Family's personal injury lien as he agreed to do.

"16. The Complaint against Respondent was initiated by an anonymous letter. By letter dated March 12, 1992, Respondent advised Paula B. Martin, Deputy Disciplinary Administrator, that his office was not furnished with the computer generated dismissal notice of Ms. Newman's Petition.

"17. Mr. James O'Hara was assigned by the Johnson County Bar Association to investigate the Complaint. Mr. O'Hara met with Respondent on June 8, 1992. Respondent told Mr. O'Hara that an employee of his firm responsible for picking up pleadings and orders from the firm's assigned courthouse mailbox in Johnson County failed to internally process the dismissal order in question after it had been received.

"18. Mr. O'Hara also met with Ms. Newman on June 8, 1992. Ms. Newman stated to Mr. O'Hara she was under the impression that Mr. Gould was present at her meeting with Respondent on March 21, 1991, as independent counsel referred to in the Release. Ms. Newman voiced no displeasure regarding her settlement with Respondent and has filed no Disciplinary Complaint against him.

"19. On September 30, 1991, Alan Lundquist was first advised that Ms. Newman's Petition had been dismissed by the Court for lack of jurisdiction through a telephone conversation with Stanton Hazlett, Deputy Disciplinary Administrator. Demand was made by American Family for its lien. American

Family received Respondent's check in the amount of $2,764.00 constituting two-thirds of its PIP lien as full restitution on February 8, 1993, the day before this hearing. American Family has filed no Disciplinary Complaint against Respondent.

### "CONCLUSIONS OF LAW

"Respondent's actions in both counts do amount to a violation of MRPC 1.3, MRPC 1.4 and MRPC 8.4(c) & (g). Respondent's actions may also give rise to a violation of MRPC 4.1(a) in Count One. The panel finds no violation of MRPC 1.1, 1.7 and 3.2 in either Count and those claims are dismissed."

On May 22, 1992, we denied a motion requesting an order to show cause filed by the Disciplinary Administrator's Office. The motion was filed as a result of Pistotnik's convictions, and it requested that Pistotnik be temporarily suspended from the practice of law under Supreme Court Rule 203(b) (1993 Kan. Ct. R. Annot. 162). We recognized the serious nature of Pistotnik's conduct, but a majority of the court declined to impose temporary suspension because a majority did not find that the conduct was so serious or egregious as to merit temporary suspension of respondent from the practice of law pending the hearing before the panel of the Board.

The panel considered the following evidence in mitigation prior to making a discipline recommendation:

### "MITIGATION

". . . In reaching its decision, the panel has considered the following findings of fact:

"1. Respondent will be 37-years old on March 10, 1993. He graduated from the University of Kansas Law School in 1981. He was admitted to the bar of the state of Oklahoma and the bar of the state of Kansas in 1982.

"2. Respondent has been engaged in the private practice of law continuously since 1981 up until July 25, 1992. He maintained law offices with family members and other associates in Wichita, Kansas, and the Kansas City Metropolitan area. He belongs to the Kansas and Oklahoma Bar Associations. His brother and sister continue to practice law in Wichita, Kansas.

"3. Respondent has suffered from health problems including treatment for alcoholism and emotional problems and two heart attacks during the last six years.

"4. Respondent married his present wife, Candice, on July 26, 1992, and the two reside [in] Tampa, Florida. Respondent and his wife own two marketing/consulting companies [that put] . . . on seminars for Florida attorneys in the areas of practice development in civil litigation such as personal injury/malpractice cases. Respondent has published a book, *Marketing*

*for Lawyers*, and produced videos dealing with lawyer advertising and marketing as well.

"5. Candice Messina Pistotnik testified she and Respondent are enjoying a happy marriage free from the turmoil Respondent had with his earlier wives. They go to counseling at least once a month together and Respondent has been drug and alcohol free since their marriage.

"6. Respondent testified in mitigation in his own behalf that he is complying with all conditions of his probation including AA sessions and aftercare therapy. Respondent told the panel he would like to return to Kansas to practice law with his brother and sister in Wichita and remains in touch with them on a regular basis for consult[ation]. He further indicated he did not feel his personal problems had any impact on his ability to practice law. Since his move to Florida, he has had time to reflect on his past mistakes and is learning to deal with normal stress in his life and learning how to avoid destructive, stressful situations.

"7. Respondent submitted a letter from Thomas E. Kiernan, MSN, ARNP, in mitigation. Mr. Kiernan has been seeing Respondent in weekly psychotherapy sessions since November 16, 1992, and reports satisfactory compliance with the demands of his probation and positive efforts to establish a successful life and overcome his past difficulties.

"8. Respondent received prior discipline and was informally admonished *In the Matter of Bradley A. Pistotnik*, Case No. W3374 (1985) involving a violation of DR 7-104(A)(1) [communicating with one of adverse interest] and *In the Matter of Bradley A. Pistotnik*, Case No. B4999 (1991) involving violations of MRPC 1.15(a) [safekeeping property] and MRPC 1.4(b) [communication]."

The issues presented by Pistotnik are: (1) Were his actions in connection with case No. B5344 of such a nature that they constituted a violation of MRPC 8.4 (b), (d), and (g); (2) were his actions in connection with case No. B5357 of such a nature that they constituted a violation of MRPC 1.3, 1.4, and 8.4 (c) and (g); and (3) is the discipline recommended by the panel reasonable?

## Standard of Review

"In *State v. Klassen*, 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' In *State v. Ziegler*, 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' See *In re Farmer*, 242

Kan. 296, 299, 747 P.2d 97 (1987)." *In re Carson,* 252 Kan. 399, 406, 845 P.2d 47 (1993).

## Case No. B5344

Pistotnik argues that the traffic conviction does not violate MRPC 8.4(b), (d), or (g) because the conduct does not (1) reflect on his honesty, trustworthiness, or fitness to practice law; (2) is not prejudicial to the administration of justice; and (3) does not adversely affect his fitness to practice law. Pistotnik observes that in the past the panel has declined to extend the application of MRPC 8.4(d) and (g) to a DUI offense, citing *In re Morris,* 251 Kan. 592, 834 P.2d 384 (1992).

Pistotnik believes the misdemeanor offense issue was addressed in the show cause order of May 22, 1992. He emphasizes that we examined all of his convictions, including those on which a disciplinary claim was dismissed by the panel because they were remote in time, and denied temporary suspension. Respondent's reliance on our temporary order is misplaced. At the time of the temporary order, a majority of this court reasoned that temporary suspension pending the hearing before the panel was not warranted. We are now reviewing the panel's report.

Pistotnik advances *Matter of Higgins,* 105 App. Div. 2d 462, 480 N.Y.S.2d 257 (1984), as providing further support for his view that the misdemeanor violations did not involve moral turpitude or prejudice the administration of justice. In *Matter of Higgins,* a New York court considered the relationship between the crime of possession of marijuana and disciplinary rules relating to professional conduct. The New York court reasoned that the possession crime did not involve an infringement of the moral sentiment of the community and did not disadvantage a client or impede or impair the quality, competence, reliability, and trustworthiness of the attorney's professional conduct. 105 App. Div. 2d at 462-63. Pistotnik observes that we cited *Matter of Higgins* in *In re Diehl,* 243 Kan. 580, 581, 757 P.2d 732 (1988). Consequently, Pistotnik maintains that his convictions did not disadvantage a client, nor did they impede or impair his ability to fulfill his professional obligations in a competent and reliable manner. He believes that MRPC 8.4(b), (d), and (g) should not be applied under case No. B5344.

Pistotnik relies upon our cases of *In re McKenna,* 249 Kan. 215, 813 P.2d 929 (1991) (probation for one year for possession of marijuana); *In re Smoot,* 243 Kan. 589, 757 P.2d 327 (1988) (public censure for possession of cocaine); *In re Diggs,* 243 Kan. 587, 757 P.2d 326 (1988) (public censure for presenting false claims and unlawful deprivation of property); and *In re Diehl,* 243 Kan. 580 (public censure for possession of marijuana). He also turns to cases from other jurisdictions: *People v. Senn,* 824 P.2d 822 (Colo. 1992) (public censure appropriate where respondent, while intoxicated, fired a weapon above the head of his wife during an argument), and *People v. Wallace,* 837 P.2d 1223 (Colo. 1992) (three-month suspension where attorney assaulted his girlfriend causing severe bodily injury). Respondent contrasts the cases in which attorneys who committed crimes were disciplined by public censure with *Committee on Prof. Ethics v. Patterson,* 369 N.W.2d 798 (Iowa 1985), in which an attorney received a higher level of discipline. In *Patterson,* the attorney had beaten his girlfriend for approximately two hours. The Iowa court imposed a sanction of indefinite suspension with no possibility of reinstatement for three months. 369 N.W.2d at 800. Pistotnik contends that there is no evidence in the instant case that his battery involved the same degree of bodily injury as existed in *Patterson.*

Pistotnik insists that the testimony of his present wife proves he has taken constructive steps to resolve his problems.

The Disciplinary Administrator responds by highlighting the fact that a variety of Kansas cases, including those cited by Pistotnik, serve as examples where we have disciplined attorneys under MRPC 8.4 for misdemeanor crimes.

The Disciplinary Administrator suggests that the comment to MRPC 8.4 provides guidance as to the type of illegal conduct that should be considered a violation of the Model Rules:

"Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." MRPC 8.4, comment (1993 Kan. Ct. R. Annot. 347, 348).

We adopted the comments which accompany the Model Rules in the Prefatory Rule of Supreme Court Rule 226 (1993 Kan. Ct. R. Annot. 252).

The Disciplinary Administrator emphasizes that since August of 1988, Pistotnik has been convicted of four separate misdemeanor offenses which involved violent behavior and pled no contest in Wichita Municipal Court to the misdemeanor charge of hit and run in violation of a Wichita ordinance. The Disciplinary Administrator insists that Pistotnik's pattern of repeated offenses constituted the type of violent conduct described in the MRPC 8.4 comments.

None of our cases have involved a situation where an attorney has been disciplined for misdemeanor convictions involving violence. The Disciplinary Administrator also cites *People v. Wallace*, 837 P.2d 1223, and *Committee on Prof. Ethics v. Patterson*, 369 N.W.2d 798, as authority for imposing suspension as the discipline for misdemeanor convictions involving violence.

The Disciplinary Administrator concludes with the observation that Pistotnik has failed to cite any cases which stand for the proposition that an attorney should not be disciplined for convictions involving violent behavior. The Disciplinary Administrator contends that both the Model Rule comment and *Wallace* refute Pistotnik's contention that his convictions, which involved violence, do not reflect on his ability to practice law.

The panel considered and rejected Pistotnik's claim that his convictions were personal matters unrelated to his legal practice. The panel explained that the argument might have been appealing to the panel if Pistotnik's previous history involved a single DUI conviction or a non-injury arrest arising out of an isolated incident. The panel emphasized that Pistotnik has demonstrated an established pattern of longstanding behavior problems which adversely reflects on the legal profession as a whole and on Pistotnik's fitness to practice law. We agree. The panel also was troubled by the fact that Pistotnik represented to Missouri Bar authorities that his prior abuse of alcohol and emotional problems had been resolved through counseling in 1990 and by the fact that his violent behavior surfaced again in 1991, resulting in two separate arrests

and a jury conviction in Johnson County, Kansas. This pattern of behavior cannot be condoned.

We recently observed that "[p]ublic confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct." *In re Pomeroy*, 252 Kan. 1044, 1050, 850 P.2d 222 (1993). Furthermore, "the overriding purpose of a disciplinary proceeding is the protection of the public." *In re Carson*, 252 Kan. 399, Syl. ¶ 4. We agree with the panel's view that Pistotnik's pattern of conduct undermines his integrity as an officer of the court. We find that the facts support the panel's conclusions.

### Case No. B5357

Pistotnik concedes that Newman's case was dismissed due to the negligent failure of his office to monitor the case, in violation of MRPC 1.3, and admits that he is responsible for what occurred in his office. Pistotnik claims he was not personally aware that the case was dismissed because "an associate had some responsibility over the case" but reasons that this fact should be considered in mitigation of the recommended discipline of suspension.

Concerning the finding that he violated MRPC 1.4, Pistotnik maintains that he had not entered into an attorney-client relationship with American Family, so the rule is not applicable because it applies to clients. Pistotnik says he agreed to protect the insurance company's lien but did not represent American Family in filing any claim.

Pistotnik claims he did not violate MRPC 8.4(c) because his reply letter informing American Family that the matter had been dropped and that no payments were obtained from the tortfeasor merely stretched the truth by not stating that the case had been dismissed by the court. He maintains that the content of the letter was true on its face. He asserts that this is not a case of converting funds and emphasizes that he made full restitution to American Family.

Finally, Pistotnik reasons that the panel must have failed to find clear and convincing evidence that he violated MRPC 4.1(a), so he has not responded to this finding.

The Disciplinary Administrator believes that the reference to a possible violation of MRPC 4.1(a) under Count I in the Final

Hearing Report is in error. The Disciplinary Administrator explains that if a violation of MRPC 4.1(a) occurred, it arose out of the facts as alleged in Count II of case No. B5357.

Concerning MRPC 1.3 and 1.4 violations, the Disciplinary Administrator contends that the findings are supported by the fact that Newman's case was dismissed for lack of prosecution and that Pistotnik failed to advise her of the dismissal for a period of nearly seven months. Pistotnik's signature was on all of the documents in the official court file.

The Disciplinary Administrator also maintains that the MRPC 8.4(c) and (g) violations under Count I are supported by the evidence. The Disciplinary Administrator suggests Newman was misled concerning the dismissal of the personal injury case. He emphasizes that the Final Hearing Report found that Pistotnik gave inconsistent explanations to his client, the insurance company, the Disciplinary Administrator's Office, and the bar investigator concerning the dismissal of the case.

The Disciplinary Administrator observes that the panel determined that Pistotnik had entered into an attorney-client relationship with American Family. He believes that the overwhelming evidence supports the finding that Pistotnik violated MRPC 1.3 and 1.4. The Disciplinary Administrator asserts that we need not get bogged down by the question of Pistotnik's relationship with American Family because the panel concluded that Pistotnik's misrepresentations would have violated MRPC 4.1 and 8.4(c) and (g) even if Pistotnik is not considered to have been American Family's attorney.

The panel was not persuaded by Pistotnik's argument that a former lawyer member of his firm had responsibility for the Newman file. The panel observed that this claim is not supported by the signature on the pleadings. The panel was troubled by Pistotnik's inconsistent explanations to the client, the insurance company, the Disciplinary Administrator's office, and the bar investigator. The panel concluded that even if the attorney-client relationship did not exist with American Family, Pistotnik's conduct in the course of dealing with American Family violated MRPC 4.1 and 8.4.

We agree with the Disciplinary Administrator's contention that the attorney-client issue is not determinative. Whether such a

relationship exists or not, the evidence supports the finding that Pistotnik misrepresented the facts to American Family. We have reviewed the record and find that the panel's findings are supported by the evidence. Pistotnik's inconsistent explanations to Newman, American Family, the Disciplinary Administrator's Office, and the bar investigator weigh heavily against Pistotnik's contentions that he did not violate MRPC 8.4 and that the facts somehow mitigate the violations.

### The Discipline Recommended by the Panel

Pistotnik believes the criminal conduct violations found in case No. B5344 do not justify suspension because they do not relate to his moral turpitude, trustworthiness, or fitness to practice law and did not directly involve clients or the administration of justice.

Pistotnik discusses the mitigating factors from *State v. Scott*, 230 Kan. 564, 572, 639 P.2d 1131 (1982), as relevant to case No. B5357: (1) whether restitution was made; (2) any statement by the complainant expressing satisfaction with restitution and requesting no discipline; (3) acknowledgement of the transgression and cooperation during the hearing.

Pistotnik accepts responsibility for his actions although he does not believe suspension from the practice of law for any period of time is warranted. Pistotnik emphasizes that he turned his life around after he served time in jail, is now enjoying a stable marital relationship, and is making further progress due to his therapy program. Pistotnik wishes to continue practicing law.

The Disciplinary Administrator accents the fact that the panel unanimously recommended the one-year suspension. The Disciplinary Administrator now recommends that Pistotnik be suspended indefinitely.

Our attention is directed to the ABA Standards for Imposing Lawyer Sanctions (1986). Section 4.62 of the ABA Standards suggests that suspension is appropriate when a lawyer knowingly deceives a client and causes injury or potential injury to that client. The Disciplinary Administrator points out that American Family may never have received the money to which it was entitled if the complaint against Respondent had not been filed and investigated.

The Disciplinary Administrator insists that several of the aggravating factors set out in Section 9.22 of the ABA Standards are applicable to Respondent. Respondent has: (1) prior disciplinary offenses; (2) exhibited a dishonest and selfish motive; (3) failed to acknowledge the wrongful nature of his conduct by stating that he had no legal obligation to inform American Family of the facts of the case because that company was not his client; (4) been admitted to practice law in Kansas since 1982 and has substantial experience in the practice of law. The Disciplinary Administrator acknowledges Pistotnik's payment of restitution to American Family but explains that under Section 9.4, forced or compelled restitution is a factor which is neither aggravating nor mitigating. Pistotnik paid the restitution the day before the disciplinary hearing.

The panel found Pistotnik's progress in therapy to be encouraging but reasoned that given Pistotnik's pattern of behavior, sufficient time has not elapsed to establish that he has permanently changed his behavior. Additionally, the panel emphasized that it could not ignore the series of Pistotnik's violations of the disciplinary rules and past discipline imposed. The panel determined that the violations must be considered as a whole rather than as isolated events of minor significance. We agree with the panel's characterization of Pistotnik's conduct.

We reject Pistotnik's claim that suspension for any period of time is unwarranted. The multiple violations of the Model Rules support a term of suspension.

IT IS THEREFORE ORDERED that Bradley A. Pistotnik be and he is hereby suspended from the practice of law in the State of Kansas for a period of one year, in accordance with Supreme Court Rule 203(a)(2) (1993 Kan. Ct. R. Annot. 162) for his violations herein.

IT IS FURTHER ORDERED that Bradley A. Pistotnik shall forthwith comply with Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that this order shall be published in the official Kansas Reports and that the costs of this action shall be assessed to the respondent.

HOLMES, C.J., not participating.
MILLER, C.J. Retired, assigned.