IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,868

In the Matter of BRADLEY A. PISTOTNIK,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed July 8, 2022. One-year suspension.

*Matthew J. Vogelsberg*, Chief Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, *N. Russell Hazlewood*, of Graybill & Hazlewood LLC, of Wichita, was with him on the answer to the formal complaint, and *Bradley A. Pistotnik*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against Bradley A. Pistotnik, of Wichita. Pistotnik received his license to practice law in Kansas in April 1982.

On November 30, 2020, the Disciplinary Administrator's office filed a formal complaint against Pistotnik alleging violations of the Kansas Rules of Professional Conduct (KRPC). The complaint was amended on December 17, 2020, and respondent answered the amended formal complaint on February 1, 2021. On April 20, 2021, respondent entered into a joint agreement with the Disciplinary Administrator's office stipulating to violations of KRPC 8.4(b) (criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) (2022 Kan S. Ct. R. at 434), KRPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and KRPC 8.4(g) (conduct that adversely reflects on the lawyer's fitness to practice law).

1

Respondent personally appeared and was represented by counsel at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys, which was conducted on April 22, 2021. During the hearing, the panel granted the motion of the Disciplinary Administrator's office to dismiss allegations of violations of KRPC 3.3 (candor towards tribunal) (2022 Kan. S. Ct. R. at 391) and KRPC 8.4(d) (conduct prejudicial to the administration of justice). After the hearing, the panel determined that respondent had violated KRPC 8.4(b), KRPC 8.4(c), and KRPC 8.4(g). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

"13. The hearing panel finds the following facts, by clear and convincing evidence:

"14. In June 2014, the respondent left his former firm where he practiced law with his brother, Brian Pistotnik. The respondent formed his own firm, Brad Pistotnik Law, P.A.

"15. Dissolution of the respondent's former firm with his brother was contentious and involved a civil dissolution action filed in district court.

"16. In the dissolution action, the court ordered that the firm's website be converted into a landing page with links to new websites created for each attorney's respective new firm so that consumer traffic would be directed appropriately.

2

"17.   On September 12, 2014, the respondent was contacted by D.D. via e-mail solicitation. D.D. offered the respondent services such as website development and Internet reputation management services.

"18.   In a September 14, 2021, [*sic*] e-mail, D.D. volunteered to the respondent what he called his professional opinion that the respondent's brother was improperly directing web traffic at the landing page away from the respondent and was unfairly affecting search engine rankings.

"19.  On September 15, 2014, the respondent engaged D.D. to build a website for the respondent's new firm and to prepare an expert report about the landing page for the dissolution action.

"20.   The morning of September 19, 2014, an anonymous derogatory posting about the respondent appeared on a website called ripoffreport.com.

"21.   Later that morning, the respondent met with D.D. about the expert report D.D. was preparing. During that meeting, D.D. recommended that the respondent regularly search his own name on the Internet for negative posts about himself.

"22.   That evening, D.D. sent an e-mail to the respondent advising the respondent that D.D. had arranged for his friend, L.C., of InternetReputation.com of Denver, Colorado to manage the respondent's internet reputation for free, as a favor to D.D.

"23.   On September 20, 2014, the respondent searched his name on the Internet and found the negative post on ripoffreport.com. The respondent believed at the time that his brother had written the post.

"24.   That same day, the respondent sent an e-mail to D.D. linking the ripoffreport.com post asking D.D. how to get rid of it. D.D. responded not to worry about it and he would take care of it.

3

"25. On September 21, 2014, D.D. sent an e-mail to the respondent that stated in part:

'I spoke with [L.C.], he is going to pull all the neg reviews I give him into their queue to have them removed or deindexed . . . . I told him I'd give him a list of the reviews we want to target at that time. So by tomorrow I need you to send me a full list of links to review pages you want addressed.'

"26. At the time, the respondent did not fully understand what deindexing was, nor did he have knowledge prior to September 25, 2014, that D.D. intended to do anything unlawful.

"27. On September 25, 2014, D.D. initiated a flood of e-mails to the servers of leagle.com, ripoffreport.com, and the Jaburg Wilk law firm, which represented a company that owned ripoffreport.com, to influence these three entities to remove negative information about the respondent from the Internet. D.D.'s e-mails stated that the flood of e-mails would cease once the unfavorable information about the respondent was removed. D.D. threatened that if the information was not removed within four hours, he would 'start hitting [their] advertisers.'

"28. That same day the respondent received a phone call from Arizona attorneys Maria Speth and Adam Kunz. The phone call was recorded. During the call the respondent was advised that Speth was a lawyer for ripoffreport.com and said her firm was receiving spam e-mails demanding that the September 19, 2014, post about the respondent be removed from the ripoffreport.com website. Speth described the call as 'urgent' and said she thought the e-mails were 'intended to crash the [firm's computer] system.' Speth stated she had received 47 e-mails as of the time of the call and that the e-mails threatened to go after advertisers if the post about the respondent was not taken down.

"29. The respondent told Speth that he was not sending the e-mails to her firm and had not authorized or directed anyone to send those e-mails on his behalf.

4

"30.   During the call, the following exchange occurred:

'SPETH:  So my only question to you is, did you hire someone or ask somebody to help you with this problem? Because whoever you hired is breaking the law.

'RESPONDENT:  No, I haven't asked anybody do that. If somebody is doing it, they're doing it on their own.

'SPETH:  Well, can you think of anybody that would want to help you in this way? Because, again, we are—this is—this is very serious. I mean, I—this is my law firm's e-mail server that is going to crash if this continues to happen. And—

'RESPONDENT:  I really—

'SPETH:  —the only way—the only way I can stop it is take it up with my client, which I don't have the authority to do, take down the post about you. So you're my only link to this and I am turning this over to the FBI, so I'm—you're my only link to this and I thought—it seemed to me like maybe you innocently may have hired somebody who said, ["]Hey, I can help you with this problem,["] not knowing that the way that they were going to do it was illegal, because that happens sometimes, so that's why I thought, let me call you and see if you go, ["]Yeah, I hired some guy and he didn't tell me he was going to do this.["]

'RESPONDENT:  No, I haven't hired anybody to—to do it, so I'm—whoever is doing it is doing it on their own.'

"31.   After this phone call, the respondent called D.D. because he believed D.D. or L.C. had initiated the e-mails to the Jaburg Wilk law firm, ripoffreport.com, and leagle.com. D.D. confirmed that he initiated the e-mails. The respondent was angry with and scolded D.D. and demanded the e-mails stop immediately.

5

"32. The respondent conceded in the parties' joint stipulation that 'his response to Speth and Kunz that he knew nothing about the e-mail attacks was false, and he should have shared his suspicion that D.D. and/or L.C. may have been responsible for the offending e-mails.'

"33. On September 29, 2014, D.D. sent the respondent an e-mail with an invoice for $2,050.00, listing charges for 'reputation management' relating to leagle.com and ripoffreport.com, expert witness work, and purchase of an android tablet.

"34. The respondent caused his firm to issue and deliver a check payable to D.D. for $2,050.00 the same day the invoice was received.

"35. In the summer of 2015, the respondent discharged D.D. from further work on the website. Afterward, D.D. began to extort and threaten the respondent. By September 8, 2015, D.D. demanded the respondent pay him $450,000.00.

"36. The respondent went to the FBI seeking protection from D.D.'s threats of extortion.

"37. The respondent was subsequently indicted by a grand jury of ten felony counts for his conduct surrounding the e-mails sent to leagle.com, ripoffreport.com, and the Jaburg Wilk law firm in the United States District Court for the District of Kansas case number 18-10099-01-EFM.

"38. On July 20, 2018, the respondent self-reported the federal indictment to the disciplinary administrator's office.

"39. On October 15, 2019, the respondent entered into a plea agreement where he plead[ed] guilty to three (3) violations of 18 U.S.C. § 3, accessory after the fact, in relation to 18 U.S.C. § 875(d), Class A misdemeanors.

6

"40.   The United States District Court for the District of Kansas accepted the respondent's misdemeanor plea, adjudicated him guilty, and ordered the respondent pay $375,000.00 in fines, restitution to ripoffreport.com of $55,200.00, and a special assessment of $300.00. The respondent paid the lump sum of $430,500.00 due in full on the day of his plea and sentencing hearing.

"41.   The respondent self-reported these convictions to the Oklahoma Bar Association and the Kansas disciplinary administrator's office.

"42.   The respondent was immediately suspended from the practice of law in Oklahoma, on an interim basis, under Oklahoma Rules Governing Disciplinary Proceedings ('ORGDP') 7.3.

"43.   Under ORGDP 7, when a lawyer pleads guilty to a crime that 'demonstrates such lawyer's unfitness to practice law,' the disciplinary case proceeds under summary proceedings and certified copies of the judgment and sentence are sent to the Chief Justice of the Oklahoma Supreme Court and constitute conclusive evidence of the conduct and 'suffice as the basis for' attorney discipline in Oklahoma.

"44.   The Oklahoma Bar Association initiated disciplinary proceedings against the respondent under ORGDP 7.1[] and 7.2, which provide for the summary process described above.

"45.   The Oklahoma Bar Association did not elect to proceed under ORGDP 7.6, which allows for filing a complaint, conducting a disciplinary hearing, and presenting evidence in addition to the documents proving the criminal conviction, instead electing to utilize the summary procedure in ORGDP 7.1 and 7.2.

"46.   The respondent requested and was granted a hearing to present mitigating evidence. The Oklahoma Supreme Court granted this hearing 'on the limited scope of mitigation and recommendation of discipline.' The Oklahoma Bar Association was permitted to present aggravating evidence.

7

"47.    The hearing was held on June 5, 2020. The respondent and his counsel learned that the Oklahoma Bar counsel planned to call FBI agent Thomas Ensz. A motion *in limine* was filed to prevent Ensz's testimony, but that motion and a motion for reconsideration were denied.

"48.    During the hearing, Agent Ensz was asked whether the respondent was cooperative during the investigation of the respondent's extortion complaint against D.D. Agent Ensz's testimony indicated that during the investigation the respondent withheld e-mails from the FBI that were inculpatory to the respondent.

"49.    On November 4, 2020, the Oklahoma Supreme Court published an opinion finding that the respondent's conduct violated Oklahoma Rules of Professional Conduct 8.4(b) and 8.4(c). The Oklahoma Supreme Court suspended the respondent's Oklahoma license for two years and one day. A suspension of this length in Oklahoma automatically requires an application for reinstatement.

"50.    Oklahoma Rules of Professional Conduct 8.4(b) and 8.4(c) are identical to Kansas Rules of Professional Conduct 8.4(b) and 8.4(c).

"51.    The respondent and the disciplinary administrator's office agreed it would not be appropriate to consider the Oklahoma Supreme Court's finding that the respondent 'misled the FBI by excluding e-mails,' because this 'was not a charge to which Respondent was placed on notice and given an opportunity to respond.' Further, it was not 'addressed in the Oklahoma Panel's report,' and 'it was not an issue Respondent could address before the Oklahoma Supreme Court.'

"52.    The respondent and the disciplinary administrator's office stipulated that no client was harmed as a result of the respondent's misconduct.

"53.    The joint stipulation contained the respondent's stipulation that his conduct forming the basis of his federal misdemeanor plea violated KRPC 8.4(b), 8.4(c), and 8.4(g).

8

"54. Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(b) (professional misconduct—criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer), KRPC 8.4(c) (professional misconduct—dishonesty, fraud, deceit or misrepresentation), and KRPC 8.4(g) (professional misconduct—conduct that adversely reflects on the lawyer's fitness to practice law) as detailed below.

"KRPC 8.4(b)

"55. 'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent plead[ed] guilty to committing three federal class A misdemeanor violations of 18 U.S.C. § 3, accessory after the fact in relation to 18 U.S.C. § 875(d). The respondent's crimes involved dishonest conduct. The respondent concealed information that could have prevented substantial harm to the victims' computer equipment and servers. The respondent's crimes adversely reflect on his honesty, trustworthiness, or fitness as a lawyer. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"KRPC 8.4(c)

"56. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty, deceit and misrepresentation when he told Speth that he had not hired anyone to help him address the ripoffreport.com post about himself. Further, once the respondent learned that D.D. had sent the e-mails that were adversely affecting the victims' computer servers, the respondent chose to cover up D.D.'s conduct instead of informing Speth and paid an invoice D.D. charged for providing Internet reputation services for the respondent. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

9

"57.   'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent committed crimes involving dishonesty that resulted in harm to third parties and was dishonest with the victims of D.D.'s crimes, resulting in his conviction of three federal misdemeanor counts of violation of 18 U.S.C. § 3, accessory after the fact in relation to 18 U.S.C. § 875(d) and suspension of his license to practice law in Oklahoma for two years and one day. The hearing panel concludes that the respondent violated KRPC 8.4(g) because his conduct adversely reflects on his fitness to practice law.

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"58.   In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"59.   *Duty Violated*. The respondent violated his duty to the public, the legal system, and the profession.

"60.   *Mental State*. The respondent knowingly violated his duties.

"61.   *Injury*. As a result of the respondent's misconduct, the respondent caused at least $55,200.00 in damages to ripoffreport.com and also caused injury to the integrity of the legal profession.

"Aggravating and Mitigating Factors

"62.   Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its

10

recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"63.   *Prior Disciplinary Offenses*. The respondent has been previously disciplined on five occasions.

    a.    On November 8, 1985, the respondent received an informal admonishment for improperly contacting both parties to a domestic matter.

    b.    On October 23, 1991, the respondent received an informal admonishment after a formal hearing for violation of MRPC 1.15 (safekeeping property) and 1.4 (communication).

    c.    On December 10, 1993, the respondent received a one-year suspension from the practice of law in *In re Pistotnik*, 254 Kan. 294, 864 P.2d 1166 (1993), for violation of MRPC 1.3 (diligence), 1.4 (communication), 8.4(b), (c), (d) and (g) (misconduct).

    d.    On April 7, 1994, the respondent received an informal admonition for violation of MRPC 1.15(b) (safekeeping property).

    e.    On May 11, 1994, the respondent received an informal admonition for violation of MRPC 1.15 (safekeeping property).

"64.   *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1982. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

"65.   *Illegal Conduct*. The respondent's misconduct in this case involves conduct that is illegal under 18 U.S.C. § 3, accessory after the fact in relation to 18 U.S.C. § 875(d), which is a class A federal misdemeanor.

"66.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

11

"67. *Absence of a Dishonest or Selfish Motive*. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness. While the respondent engaged in dishonest conduct, his conduct does not appear to have been motivated by dishonesty or selfishness. Instead, the respondent's conduct appears to have been motivated by fear and ignorance of the type and gravity of the problems being expressed by Speth.

"68. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. During the period of time the respondent's misconduct occurred, he suffered from a severe back injury that required multiple surgeries in 2014 and 2015. The respondent was prescribed pain medication that affected his thinking, though the respondent testified at some point he stopped taking the medication. One of the respondent's surgeries resulted in an infection and inflammation in his spine, which required more surgery and forced the respondent to spend a substantial amount of time rehabilitating. During this time, the respondent required significant help from his wife to care for himself and needed walking aids to get around.

"69. Also, during this time, the respondent was in the process of dissolving his prior law practice with his brother, was involved in a civil dissolution action in court, and was starting up his own law practice, including creating the court-ordered landing page and a new website for his firm. It is clear the respondent's adverse health conditions, family and business struggles with his brother, and personal struggle in starting his own law practice contributed to his misconduct.

"70. *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*. On the day the respondent plead[ed] guilty in the United States District Court for the District of Kansas for three counts of violation of 18 U.S.C. § 3, the respondent paid $430,500.00 ordered as fines, restitution, and fees assessed against him in full. The hearing panel finds this was a timely and good faith effort on the part of respondent to rectify the consequences of his misconduct and make restitution.

"71. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process.

12

Additionally, the respondent entered into a joint stipulation with the disciplinary administrator's office admitting his violations of KRPC 8.4(b), 8.4(c), and 8.4(g) and the relevant facts.

"72. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Wichita, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the testimony of Tony Atterbury, William Barr, Daniel Giroux, and Timothy Finnerty and by multiple letters and affidavits received by the hearing panel. The hearing panel also notes the respondent's significant contributions to charity and the community in his area, for which he should be commended.

"73. *Delay in Disciplinary Proceedings.* The respondent self-reported his federal indictment on July 20, 2018. The respondent also reported his conviction in the United States District Court for the District of Kansas, which occurred on October 15, 2019. This disciplinary proceeding was delayed initially by circumstances surrounding the COVID-19 pandemic and also by the filing of an amended formal complaint on December 17, 2020, adding Count II alleging the respondent's November 24, 2020, suspension in Oklahoma.

"74. *Imposition of Other Penalties or Sanctions*. The respondent has experienced other sanctions for his conduct. The respondent was convicted of federal misdemeanors, incurred significant fines, restitution, and other fees, was suspended from the practice of law in Oklahoma for two years and one day, and has suffered negative publicity.

"75. *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct. The hearing panel concludes that the respondent is remorseful. The respondent established his remorse through his statements and demeanor during the formal hearing, his payment of fines, restitution, and fees in the criminal matter, and his cooperation and entry of a joint stipulation to his misconduct in this disciplinary case.

13

"76. *Remoteness of Prior Offenses.* The misconduct which gave rise to the respondent's prior discipline is remote in time and character to the misconduct in this case. The respondent's prior misconduct involved violations of MRPC 1.15 (safekeeping property), which is not at issue here, and violations of similar rules but for a different manner of conduct. The respondent's most recent prior discipline was imposed in 1994, more than 30 years before the misconduct in this case.

"77. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.11   Disbarment is generally appropriate when:

'(a)   a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses;

'(b)   a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.'

'5.12   Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

'7.2   Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

14

"78.   The hearing panel observes that the respondent has practiced law for the past 30 years without discipline prior to the misconduct in this case. While the respondent was dishonest with Speth and Kunz and should have informed them of D.D.'s involvement, the respondent's conduct was motivated by fear and ignorance of the technological issues involved. Further, at the time the respondent was experiencing significant family issues with his brother, a business dissolution, starting up his own practice, and near-debilitating recurring medical issues.

"79.   The respondent's conduct and criminal convictions reflect adversely on the legal profession. However, the hearing panel agrees with the opinion expressed in testimony at the hearing that the respondent's entire career should not be measured by a single lapse of judgment. The hearing panel also notes that no clients were injured by the respondent's conduct. Because of this, the hearing panel is not concerned with the respondent's return to practice after a period of suspension, if that is the discipline ultimately imposed.

"*Recommendation of the Parties*

"80.   The disciplinary administrator and the respondent jointly recommended that the respondent's license to practice law in Kansas be suspended for one year. The parties further recommended that the respondent undergo a reinstatement hearing pursuant to Rule 232 (2021 Kan. S. Ct. R. 287) prior to reinstatement.

"*Recommendation of the Hearing Panel*

"81.   Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of one year. The hearing panel further recommends that the respondent not be required to undergo a hearing pursuant to Rule 232 (2021 Kan. S. Ct. R. 287) prior to reinstatement.

"82. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court generally considers the evidence, the disciplinary panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, the appropriate discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281) (a misconduct finding must be established by clear and convincing evidence). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint and of the amended complaint, to which he filed an answer. Prior to the hearing before the disciplinary panel, respondent entered into a joint agreement stipulating to violations of KRPC 8.4(b), (c), and (g). Based on that stipulation, the Disciplinary Administrator's office moved to dismiss the alleged violations of KRPC 3.3 and 8.4(d), and the panel granted that motion because the evidence did not support the allegations. No exceptions were filed in the case, and the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). The evidence before the panel clearly and convincingly established that the charged misconduct violated KRPC 8.4(b) (criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (conduct that adversely reflects on the lawyer's fitness to practice law).

16

The only issue left for us to resolve is the appropriate discipline. Respondent and the Disciplinary Administrator's office jointly recommended that we suspend respondent's license to practice law for one year and that respondent be subject to a reinstatement hearing under Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293). The disciplinary panel recommended that we suspend respondent's license to practice law for one year but that respondent not be required to undergo a hearing prior to reinstatement.

The court agrees with the joint recommendation of the Disciplinary Administrator's office and respondent. There are several mitigating factors present that affect the degree of discipline warranted:  respondent's adverse health conditions, family and business struggles with his brother, and personal struggle in starting his own law office contributed to his misconduct; respondent expressed genuine remorse; respondent faced significant other sanctions for his conduct; respondent has made significant contributions to charity and the community in his area; respondent's prior misconduct was remote in time and character to this misconduct; and respondent made a timely, good-faith effort to make restitution and remedy the consequences of his misconduct.

Even so, we cannot overlook the fact that respondent committed three federal Class A misdemeanor violations, and that those violations involved dishonest conduct. Nor can we overlook the fact that, although respondent did not injure any of his clients, his misconduct caused at least $55,200 in damages to ripoffreport.com. To properly balance these competing interests, we order that respondent's license be suspended for one year and that respondent undergo a reinstatement hearing under Rule 232 before his petition for reinstatement will be considered.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Bradley A. Pistotnik is suspended for one year from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2022 Kan. S. Ct. R. at 281) for violating KRPC 8.4(b), (c), and (g).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292) (notice to clients, opposing counsel, and courts following suspension or disbarment).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

18