COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Richard I. VESOLE, Respondent.

No. 86–1593.

Supreme Court of Iowa.

Feb. 18, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Michael L. Liebbe of Liebbe & Simmons, Davenport, for respondent.

Considered by REYNOLDSON, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

This attorney disciplinary proceeding arises out of three separate instances in which Richard I. Vesole indecently exposed himself to women. The Grievance Commission found that Vesole violated Iowa Code of Professional Responsibility for Lawyers DR1–102(A)(3) (engaging in illegal conduct involving moral turpitude), (6) (engaging in any other conduct adversely reflecting on fitness to practice law), and EC1–5 (failing to refrain from all illegal and morally reprehensible conduct). The commission recommended that Vesole's license to practice law be suspended indefinitely without reinstatement for a period of twelve months from the date of its decision. It also recommended, as a condition for reinstatement, that Vesole present "substantial convincing evidence" to this court that he is no longer suffering from the problems or conditions which gave rise to the instances in question.

We temporarily suspended Vesole's license to practice law on September 15, 1986. Upon our de novo review, see Iowa Sup.Ct.R. 118.10, we agree with the commission that Vesole was guilty of these ethical violations; however, we impose a suspension of three years from September 15, 1986.

Vesole does not dispute that in September 1983 he entered a plea of guilty to a charge of indecent exposure in Cedar Rapids; that in January 1986 he pled guilty to two counts of disorderly conduct in Bettendorf; and that in July 1986 he pled guilty to a charge of public indecency in Moline, Illinois. Nor does he dispute that in each incident he exposed his genitals to women. At the hearing before the commission, Vesole's defense was based on irresistible impulse.[1] He sought to excuse his actions or mitigate their consequences through the

---

1. Vesole waived personal appearance before the commission, but was represented by counsel

who presented two witnesses on his behalf.

testimony of Dr. Richard Whittlesey, a private counseling psychologist, who began treating Vesole shortly after the third conviction.

Dr. Whittlesey diagnosed Vesole's condition as a form of exhibitionism. In the doctor's opinion, once Vesole started to undo his trousers he could not resist the completion of the act of exposing himself. In this sense, according to Dr. Whittlesey, the acts were the result of an irresistible impulse. He compared Vesole's conduct to the inability of alcoholics to control their drinking and compulsive gamblers to control their gambling. He thus described Vesole's conduct as "compulsive behavior."

In Dr. Whittlesey's opinion, Vesole knew his actions were improper not only when he started to expose himself, but also during the time of the exposures and after. Vesole readily admitted these subjective feelings to the doctor but explained he could not control his actions.

Vesole also admitted to the doctor the three occasions when he was caught and admitted there were numerous other instances when he was not caught. According to the doctor, all of these instances occurred while Vesole was driving his automobile. The exposures would usually occur when a woman was in a van and her line of vision was higher than Vesole's while he was in his automobile. According to Dr. Whittlesey, Vesole committed these acts in an automobile because he felt he had control of the situation and a means of escape.

Dr. Whittlesey could give no opinion as to when, if ever, treatment would cure Vesole of his problem. However, he felt he could give such an opinion in approximately a year. Treatment would be lengthy and would require Vesole's cooperation.

According to the statistics, recidivism for this type of behavior ranges from 25 to 50 percent. Dr. Whittlesey suspected, however, that the rate might be even higher.

Vesole was thirty-one years old at the time of the hearing. His former employer, a Davenport attorney, testified that he employed Vesole in December 1983. The employer was not aware of the first conviction when he hired Vesole. Vesole neglected to tell the employer about the second conviction. When the employer learned of it from other parties, he warned Vesole but did not terminate his employment. After learning about the third conviction from other parties, the employer did terminate Vesole's employment.

■ We agree with the commission's conclusion that Vesole violated DR1–102(A)(3) and (6), *see Committee on Professional Ethics & Conduct v. Floy*, 334 N.W.2d 739, 740 (Iowa 1983) (eighteen-month suspension for misdemeanor conviction for two obscene phone calls), and EC1–5, *see Committee on Professional Ethics & Conduct v. Patterson*, 369 N.W.2d 798, 800–01 (Iowa 1985) (three-month suspension for serious misdemeanor conviction for assault without intent to inflict serious injury but causing bodily injury). *See generally* Annotation, *Sexual Misconduct as Ground for Disciplining Attorney or Judge*, 43 A.L.R.4th 1062 (1986). We also agree with the commission's conclusion that the defense of "irresistible impulse" is not available in the context of a lawyer disciplinary action. *See Committee on Professional Ethics & Conduct v. Silver*, 395 N.W.2d 877, 878 (Iowa 1986) (criminal defenses not available to lawyers charged in disciplinary cases); *see also State v. Heilprin*, 59 Wis.2d 312, 207 N.W.2d 878, 883 (Wis.1973) (personality disorder does not absolve attorney from responsibility for his alleged professional misconduct). Moreover, the commission was correct in pointing out that even if the defense were available, the evidence failed to establish it since "Dr. Whittlesey himself concluded [Vesole] knew that his act was wrong, not right, ... before he started, while he performed it, and afterward." *See State v. Craney*, 347 N.W.2d 668, 679–80 (Iowa 1984).

■ Having concluded ethical violations have occurred, we turn to the question of what sanction is justified under the circumstances.

Attorney disciplinary proceedings are not designed to punish, but rather to determine the fitness of an officer of court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices.

*Committee on Professional Ethics & Conduct v. Borchart*, 392 N.W.2d 491, 492 (Iowa 1986) (citing *Committee on Professional Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981)). Sanctions are tailored to the facts of each case. *Borchart*, 392 N.W.2d at 492.

The evidence in this case is overwhelming that Vesole has committed not three, but many illegal or morally reprehensible acts. The evidence is also overwhelming that the conduct is compulsive and will require long-term treatment. Moreover, the recidivism statistics cited by Dr. Whittlesey paint a dismal picture as to eventual cure. These facts necessarily dictate an extended time of suspension to ensure Vesole's fitness to practice law, to protect the integrity of our system of justice and to protect the public from the threat of any similar future acts.

We therefore suspend Vesole's license to practice law in the courts of this state indefinitely, and with no possibility of reinstatement for three years from September 15, 1986. This suspension applies to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12.

Upon any application for reinstatement, Vesole shall establish that he has not practiced law during the suspension period and that he has in all other ways complied with the requirements of our rules pertaining to suspended attorneys. Any application for reinstatement shall be accompanied by satisfactory evidence that Vesole has recovered from his personality disorder and that during the period of suspension he has not engaged in any acts similar to the ones described in this opinion. If Vesole does apply for reinstatement, the court may appoint an independent psychologist or psychiatrist to evaluate Vesole's condition.

LICENSE SUSPENDED.