No. 82,784

In the Matter of ROBERT W. KETTER, *Respondent.*

(992 P.2d 205)

Opinion filed November 5, 1999.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*Robert W. Ketter,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Robert William Ketter, alleging violations of Kansas Rules of Professional Conduct (KRPC) 8.4 (1998 Kan. Ct. R. Annot. 386). The Kansas Board of Discipline panel recommended disbarment. The Disciplinary Administrator recommends indefinite suspension. Ketter requests published censure. Three members of this court would impose indefinite suspension. However, a majority of the court agrees to suspend the imposition of discipline for a probation period of 3 years from this date under terms set out herein. A violation of any term subjects Ketter to further appropriate discipline including disbarment. Ketter said during oral argument:

"I would like to state to this court that if you allow me to keep my license and continue practicing, if any . . . as a way to redeem myself and to prove myself . . . if any instance of sexual misconduct would ever come up again you can quote the transcript that is being recorded and I will surrender my license."

We shall hold Ketter to his promise.

Ketter presents two issues: (1) Does his Class B nonperson misdemeanor conviction for lewd and lascivious behavior, under the facts here, constitute a violation of KRPC 8.4, and (2) what is the appropriate discipline?

## FACTS

Ketter is an attorney admitted to the practice of law in Kansas in 1986. The office of the Disciplinary Administrator filed a formal

complaint alleging violations of KRPC 8.4 following Ketter's 1998 misdemeanor conviction for lewd and lascivious behavior.

The panel found that Ketter violated KRPC 8.4. Ketter's 1998 misdemeanor conviction arose out of an incident in a Topeka grocery store parking lot. A 17-year-old boy reported he saw Ketter masturbating while sitting in his car which was parked in the store parking lot. Ketter denied the charge and testified at his bench trial.

The formal complaint filed by the Disciplinary Administrator alleged that, besides the misdemeanor conviction, Ketter had "engaged in a pattern of repeated offenses indicating an indifference to the law." In presenting the case to the panel, the Disciplinary Administrator referenced two prior informal admonitions involving Ketter. The first dated back to 1987, and involved three convictions for indecent exposure in North Carolina. The second occurred in 1996. It arose from a charge of lewd and lascivious conduct in Kansas. The Lyon County District Court found Ketter not guilty by reason of diminished capacity. Despite the acquittal, Ketter was again informally admonished.

Ketter acknowledged before the hearing panel that Rule 202 (1998 Kan. Ct. R. Annot. 207), precluded him from attempting to dispute the underlying merits of his 1998 conviction. Under Rule 202 a certificate of conviction is conclusive evidence of the commission of a crime in a disciplinary proceeding.

Ketter presented extensive testimony on his background and prior disciplinary offenses. He also put on testimony from a former employer and a former co-worker.

## Ketter's Background

While at the United States Naval academy, Ketter's eyesight deteriorated, dashing his hopes of becoming a pilot. He married upon graduation from the Academy and began his career in the Marine Corps as a second lieutenant.

He applied for a military law school program. While his application was pending, he was deployed to Beirut, Lebanon. He was accepted in the legal program and returned to the United States.

A few months later, a truck bomb exploded at his former marine barracks in Beirut, killing his replacement and 241 other marines.

During law school his marriage deteriorated into what he termed a "peaceful co-existence." When he graduated from law school, Ketter was assigned to Camp Lejune, North Carolina, to begin his legal career with the Marine Corps. He had specifically requested to not be sent to Camp Lejune because Camp Lejune contained too many painful reminders of the friends he lost in the Beirut bombing.

While serving as a Judge Advocate at Camp Lejune, Ketter began exhibiting himself to women. He was arrested after exposing himself to an off-duty female probation officer. Police linked Ketter to two other similar incidents and he pled guilty to three counts of indecent exposure. He resigned from the Marine Corps, received an honorable discharge, and returned to Kansas. Military personnel informed the Disciplinary Administrator of the North Carolina convictions. Ketter's first informal admonition followed.

Ketter practiced in Goodland for 3 years. He was recruited by a Topeka law firm and began working in Topeka in 1991. Shortly thereafter, he again began having impulses to exhibit himself. He did not seek therapy or any other type of help.

### The Hays-Emporia Incidents

Ketter exposed himself to a group of young women in Hays, Kansas, in July 1993. He also masturbated in front of a Baskin-Robbins store employee in Emporia in July 1994. He was caught a few days later in Emporia leaving obscene notes on the windshields of cars women had parked in a grocery store parking lot. Police questioned Ketter about the Baskin Robbins incident and he confessed. Ketter was charged with lewd and lascivious behavior.

According to Ketter, he wrote the notes in an attempt to assuage his compulsion to expose himself. No charges were ever filed concerning the Hays incident, which Ketter explained as a case of being "mooned" by one of the girls. In response, Ketter "pulled down [his] shorts and left."

When news of his arrest became public, Ketter was fired from the Topeka law firm. His wife left him and took their children back east. Ketter admitted himself to a clinic in Lenexa for treatment. The treating physician's diagnosis was exhibitionism and obsessive compulsive disorder. He received 10 days of inpatient care and was treated with anti-depressant medication.

The district judge in the Emporia incident (at the Baskin-Robbins store) found Ketter not guilty due to diminished capacity. The treating physician testified that Ketter "had an irresistible compulsion to engage in that behavior which he could not control."

The Disciplinary Administrator filed a complaint, charging Ketter with violating KRPC 8.4. The panel found respondent violated Rule 8.4(d) (engaging in conduct that is prejudicial to the administration of justice) and 8.4(g) (conduct that adversely reflects on a lawyer's fitness to practice law).

The Disciplinary Administrator recommended published censure. The panel majority imposed informal admonition. (The dissenting member recommended suspending discipline while Ketter complied with a course of evaluation and therapy.) The current panel, in reviewing the 1998 Topeka incident now before us, quoted extensively from the 1994 panel's dissenting opinion after the Emporia incident. The 1994 dissenting panel member concluded, in part:

"I find the respondent's appearance and preparation to be very polished. I also find his presentation to be lacking in the sense that when he expresses remorse, he expresses remorse in terms of embarrassing the Bar. Not once during his entire presentation or in any of the writings he produced, does he mention the victims of his conduct. He has a very positive spin on everything that he presented while at the same time he ignores inconsistencies between his testimony and the records he produced. . . . Absent an understanding of what leads to such behavior and absent the ability to articulate with specificity a treatment plan and his personal plans for dealing with these urges, I believe we would do a disservice to Mr. Ketter, the Bar, and the women of this state by letting this case go at this point and time with a simple informal admonition."

### The Topeka Incident

The third complaint against Ketter was filed by the Disciplinary Administrator after Ketter was found guilty of lewd and lascivious

behavior in Shawnee County. Ketter did not stipulate to any of the alleged disciplinary violations. Ketter claims he did not commit the acts charged. He claims instead that he was suffering from "blue balls" on the day in question, and merely massaging his testicles to relieve the pain. Ketter claims the 17-year-old boy who reported seeing him masturbating committed perjury. Ketter contends the panel should look to the underlying facts of the incident in mitigation of punishment.

The panel included in its findings of fact:

"4. Following his arrest [on the North Carolina charges], the Respondent commenced therapy on April 14, 1987 with Chaplain Ron King. Disciplinary Administrator's· Exhibit C is Chaplain King's December 14, 1987 response to former Disciplinary Administrator Bruce E. Miller. Chaplain King stated that the Respondent did not conform to the DSM III-R criteria for exhibitionism. He stated that the events were episodic. Chaplain King attributed the Respondent's conduct to post-traumatic stress disorder (the Respondent had left the Marine Corps Headquarters in Beirut, Lebanon shortly before its bombing and felt guilt as a survivor); the Respondent had a strong libido; and his wife had gained a great deal of weight and this exacerbated a long-standing feeling of deep revulsion for obese women. Chaplain King did not believe that there would be a repetition of this problem. The Respondent discontinued counselling when he moved his residence to Topeka, Kansas following his discharge from the United States Marine Corps on September 30, 1987.

"5. The Respondent stated in his response to then Disciplinary Administrator Bruce E. Miller in his December 23, 1997 response to Complaint No. B4275, 'I guarantee you that I would never do such a thing again. The perspective into which I have been able to put his entire ordeal is that I was suffering from an isolated emotional problem which caused me to behave in a way which I had never behaved before and have not behaved since.' Attached to his response were several letters from individuals that attested to his former high character and the superior quality of his work as a Judge Advocate.

"6. The Respondent received another Informal Admonition from the Disciplinary Administrator's Office on March 7, 1996 in Complaint No. B6005. The Informal Admonition was a result of a disciplinary hearing which occurred on November 20, 1995. The finding of facts in that case, which were not disputed by the Respondent, were as follows: 'That the respondent, on or about July 21, 1993, pulled down his shorts and exposed himself to five (5) young women at the Holiday Inn in Hays, Kansas; that on about July 6, 1994, respondent, wearing only a t-shirt exposed himself and masturbated in front of a female Baskin-Robbins Ice Cream Store employee in Emporia, Kansas, and on the same day wrote an obscene message on a post-it note and stuck it on the car window of two (2) young women respondent was observing in the Dillons' parking lot in Emporia, Kansas; and on

several other occasions wrote obscene post-it notes and placed them on car windows of young women who he had been observing, all of which took place in Emporia, Kansas.' At the instant hearing the Respondent stated that he left less than 10 such notes.

. . . .

"12. The instant matter, Complaint No. DA7191, arises out of Respondent's conviction in Shawnee County, Kansas with lewd and lascivious behavior in violation with K.S.A. 21-3508(a)(2). (97 CR 03631). The Respondent was charged on November 11, 1997 and convicted on March 19, 1998. On April 17, 1998, the Respondent was sentenced to six months in jail. That sentence was suspended and the Respondent was placed on twenty-four (24) months' supervised probation. Specifically, the Respondent was charged with masturbating in the parking lot of a Dillon's grocery store in Topeka, Kansas.

. . . .

"17. According to respondent's Exhibit 14 he commenced psychological treatment with George Hough, Ph.D. nine days prior to his trial on the subject charge. According to Dr. Hough, 'Given his commitment to his treatment (for a past history of exhibitionistic behavior), coupled with the excellent support he enjoys from his wife and family, his prognosis, in my professional opinion, is good to excellent. I have discerned no evidence of recidivism, and I believe his having finally extricated himself from a very unhappy first marriage has helped his prognosis greatly.' At the hearing before this panel the respondent was asked what treatment issues he was dealing with Dr. Hough. The respondent didn't know and stated '. . . we just end up going in tangents on—on a wide variety of things.'
"18. The respondent has engaged in a pattern of repeated offenses dating over a period of eleven (11) years. His conduct is prejudicial to the administration of justice and adversely reflects on his fitness to practice law."

Ketter filed exceptions to the hearing panel's report. He takes issue with a number of its findings: specifically, whether his conduct violates the KRPC and the panel's discussion of the factors in aggravation and mitigation of punishment.

## DISCUSSION

In disciplinary matters, we have a duty to examine the evidence and decide for ourselves the judgment to be entered. Although the report of the panel is advisory only, it will be given the same dignity as a special verdict by a jury or the findings of a trial court. We will adopt the report where: (1) amply sustained by the evidence, or (2) it is not against the clear weight of the evidence, or (3) the evidence consisted of sharply conflicting testimony. See *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993). We apply these rules in considering the evidence, the findings, and the arguments, and in deciding whether violations of the KRPC exist. If we find violations, we decide the appropriate discipline to be imposed. *In re Berg*, 264 Kan. 254, 269, 955 P.2d 1240 (1998). It is our responsibility to examine the evidence and determine the discipline to be imposed. *In re Gribble*, 261 Kan.

985, 986, 933 P.2d 672 (1997). We disagree with the panel's recommended discipline.

With our standard of review as prologue we examine the first issue: Does Ketter's Class B nonperson misdemeanor conviction for lewd and lascivious behavior, under the facts of this case, constitute a violation of KRPC 8.4? The answer is yes.

An initial question concerns what sections of KRPC 8.4 the panel found Ketter violated. The panel's report says 8.4(b) and (d), while the transcript says 8.4(d) and (g). The Disciplinary Administrator contends the transcript is correct and only briefs 8.4(d) and (g) as violations. We accept the Disciplinary Administrator's representation that no 8.4(b) violation was found, and thus no 8.4(b) violation is before us.

There is no dispute that the panel found Ketter violated KRPC 8.4(d). (It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.) Ketter's conviction for lewd and lascivious behavior was unrelated to his practice of law. However, 8.4(d) is implicated because the panel took issue with his sworn testimony. Ketter denies committing the acts that led to his conviction. He testified at his trial that he did not masturbate in his car and contends the witness perjured himself for no apparent reason. The district court did not believe Ketter's testimony. Neither did the panel.

Similarly, Rule 8.4(g) says that it is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

It is undisputed that Ketter was convicted of a misdemeanor. The problem here is that the misdemeanor conviction is unrelated to Ketter's practice of law. Exposing oneself does not necessarily reflect adversely on a lawyer's honesty or trustworthiness. The argument is that it reflects adversely on Ketter's fitness as a lawyer when viewed as a pattern of misconduct.

Ketter cites *In the Matter of Williams*, 266 Ga. 132, 464 S.E. 2d 816 (1996), in support of his argument that he has not violated Rule 8.4. *Williams* involved a lawyer convicted of public indecency (a misdemeanor). The conduct (undisclosed by the opinion) took place inside Williams' apartment, in view of neighbors standing outside. The question for decision in *Williams* was whether the misdemeanor of public indecency was a per se crime of moral turpitude under Georgia's Bar Rules. *Williams* held it was not. The Georgia Supreme Court said: "[P]ublic indecency is not per se a crime of moral turpitude under the Bar Rules because it does not necessarily relate to an individual's fitness to practice law." 266 Ga. at 132. Ketter urges us to adopt the analysis of *Williams*.

The *Williams* court did not say the crime of public indecency would *never* constitute a violation of its disciplinary rules. *Williams* simply rejected a per se rule that such conduct would always merit discipline "because it does not, *in all circumstances*, directly relate to an attorney's fitness to practice law." (Emphasis added.) 266 Ga. at 132.

We prefer to examine the particular circumstances of each disciplinary case. See *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992). While lewd and lascivious behavior may *not necessarily* relate to an individual's fitness to practice law, the determination is for us to make under the facts of each case before us.

Ketter also relies on *In re Morris*, 251 Kan. 592, 834 P.2d 384 (1992), to support his position. The *Morris* hearing panel found that driving while intoxicated was not conduct prejudicial to the administration of justice and did not adversely reflect on the lawyer's fitness to practice law. The panel said: " '[O]ur legislature has enacted adequate laws to control and punish the offense of driving while intoxicated. We can find no reason, based on the evidence in this case, to extend the application of the Model Rules of Professional Conduct to traffic offenses.' " 251 Kan. at 593. We agreed with the panel's findings and conclusions. 251 Kan. at 594.

Although *Morris* extends a degree of support to Ketter's position, Morris was charged with a laundry list of disciplinary infractions. Each disciplinary case is fact intensive. The *Morris* panel recognized this when it qualified its statement with the words " 'based on the evidence in this case.' " 251 Kan. at 593. The Disciplinary Administrator correctly points out that Morris was disciplined for his misdemeanor conviction on possession of methamphetamine. The panel held Morris' misdemeanor conviction a violation of Rule 8.4(b), (d), and (g).

The comments to Rule 8.4 state:

"Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. *A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.*" (Emphasis added.) (1998 Kan. Ct. R. Annot. 386.)

The pattern of social misconduct displayed by Ketter is serious. As the Disciplinary Administrator observes, "[p]ublic confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct." *In re Pomeroy*, 252 Kan. 1044, 1050, 850 P.2d 222 (1993). Ketter has twice committed the same violations of our disciplinary rules, and twice promised such conduct would never again occur. Such emphatic professional confessions and assurances followed by broken promises undermines our con-

fidence in Ketter's integrity as an officer of the court. Ketter's repeated incidents of exposure reflect adversely on his fitness to practice law under Rule 8.4(g).

Furthermore, as the Disciplinary Administrator aptly suggests, Ketter admitted in his last disciplinary proceeding that his conduct (even though he was acquitted due to "diminished capacity") violated KRPC 8.4(g). Similarly, Ketter acknowledged his three misdemeanor convictions in North Carolina violated DR 1-102(A)(3) and (6). We are not persuaded by the inconsistent position reflected in his current argument that his latest conviction does not constitute a violation of Rule 8.4.

The record contains clear and convincing evidence that Ketter violated Rule 8.4(d) and (g). His conduct, when viewed in its entirety, reflects adversely on his fitness as a lawyer and is prejudicial to the administration of justice.

The panel found only one factor in favor of mitigation of punishment. It stated: "The hearing panel finds mitigating factor (c) personal or emotional problems or such misfortunes have contributed to violation[s] of the Kansas Rules of Professional Conduct: The panel finds that the Respondent is a sex addict and predator. He is an intelligent, manipulative sociopath."

The panel found many factors in aggravation, including: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victims; (i) substantial experience in the practice of law; and (k) illegal conduct.

## Aggravating Factors

Ketter argues that the panel erred by finding "prior disciplinary offenses," "a pattern of misconduct," and "multiple offenses" separate aggravating factors. Ketter concedes that the 1996 informal admonition could be considered as an aggravating circumstance. However, the three North Carolina convictions should not because they are too remote in time.

There is support for Ketter's contention that the North Carolina convictions are too remote to be considered in aggravation of punishment. One of the conclusions of law we adopted in *In re Pis-*

*totnik*, 254 Kan. 294, 296, 864 P.2d 1166 (1993), was that the charges and convictions occurring 5 years before the disciplinary hearing were "too remote in time" for the *Pistotnik* panel to find a violation. Similarly, in *In re Sutton*, 265 Kan. 251, 959 P.2d 904 (1998), we held that a 7-year time period was sufficient to render the prior disciplinary offense too remote. Ketter also cites *People v. Doherty*, 945 P.2d 1380, 1382 (Colo. 1997). *Doherty* held that for the purposes of finding an aggravating factor, a pattern of misconduct in the current case, previous cases in 1994 and 1996 occurred "in the same general time frame." (There, a 1997 case and two earlier cases in 1994 and 1996 were held to be in the same general time frame.) Ketter's North Carolina convictions occurred in 1987, approximately 11 years before the present complaint.

Ketter's argument has merit. His 1996 informal admonition is a proper consideration as an aggravating circumstance. However, the North Carolina convictions are too remote for consideration in this phase of the disciplinary process. The 1996 disciplinary offense should be considered, but the question is, how many ways does it count against him? Plainly, the 1996 offense constitutes a "prior disciplinary offense." However, two offenses (his current plus the 1996 offense) do not necessarily constitute a "pattern" for the purposes of aggravation. Ketter's 1988 convictions have already been taken into consideration in finding a violation of Rule 8.4 (as a pattern of violating the law). Further, "multiple offenses" refers to the number of disciplinary offenses the *current* panel finds Ketter committed. Here, Ketter was charged with only one count—violating Rule 8.4. The aggravating factor of "multiple offenses" should not apply unless multiple violations of the disciplinary rules are found in the current proceeding. Otherwise, there would be no distinction between the aggravating factors of "multiple offenses" and "prior disciplinary offenses."

Ketter also takes issue with the panel's finding that a "dishonest or selfish motive" was present as an aggravating factor. Ketter contends this finding is not supported by the evidence because, "[t]here is no evidence, much less clear and convincing evidence, that respondent had any dishonest or selfish motive regarding the events in the Dillon's parking lot." The Disciplinary Administrator

contends the panel made this finding because of Ketter's claim that the 17-year-old boy perjured himself. The Disciplinary Administrator states: "The panel concluded that the respondent viewed himself as a victim . . . . There was ample evidence for the panel to conclude that the respondent had a selfish motive in this case."

Again, it seems Ketter's argument has some merit. The panel may have concluded that Ketter displayed selfishness during the proceedings. We find that such a conclusion is not clear and convincing evidence of the aggravating factor "selfish or dishonest motive" in committing the crime of lewd and lascivious conduct.

Ketter next questions the panel's finding that he refused to acknowledge the wrongful nature of conduct as an aggravating factor. Ketter called his 1989 and 1996 conduct "horrible." He also stated, "my conduct was so egregious" and "it makes me physically ill." "[T]he worst part of this whole thing is the way I feel about myself, I hate myself for that." However, Ketter makes clear in his brief that the conduct he is referring to as egregious does not include the 1997 events in the Topeka parking lot. Ketter says he "fully admits that what he did on September 26, 1997 was wrong, inappropriate, and a serious lapse in judgment, but as noted above, respondent asserts that it does not constitute professional misconduct."

Even if one takes Ketter's version of events as true, the 1997 parking lot conduct is still totally inappropriate. Ketter does not seem to acknowledge his need for help. Moreover, he has not acknowledged that, despite his claims of innocence, he was convicted of a misdemeanor, which under the facts, does constitute professional misconduct. Ketter is in denial. The panel properly considered his refusal to acknowledge the wrongful nature of his conduct as an aggravating circumstance.

The panel also lists "vulnerability of victim" as an aggravating factor. There is no evidence to support the existence of this factor, and the Disciplinary Administrator does not contend otherwise.

The panel next listed substantial experience in the practice of law as an aggravating factor. This seems inappropriate since Ketter's conduct was outside his practice of law, and has nothing to do

with experience in the practice of law. The Disciplinary Administrator did not address this factor.

Finally, Ketter takes issue with the panel's finding of illegal conduct as an aggravating factor. Ketter was convicted of a misdemeanor. Under Rule 202, his conviction is conclusive evidence of the commission of the crime in a disciplinary proceeding. There is clear and convincing evidence to support this finding.

## Mitigating Factors

The Disciplinary Administrator does not discuss mitigating factors. Ketter submits the following factors apply in favor of mitigation: (1) absence of a dishonest or selfish motive; (2) his present and past attitude as shown by his cooperation during the hearing; (3) imposition of other penalties or sanctions; and (4) remoteness of prior offenses. These factors, with the exception of number (2), are to be considered in mitigation of punishment.

Number (2) is excepted because it is against the clear weight of the evidence. Ketter's past attitude may have been cooperative, but that cannot be said about his present attitude. Ketter's present attitude is an example of his unwillingness to identify and confront his problems.

The panel's distaste with Ketter's actions and testimony is apparent. However, we cannot uphold its findings with respect to aggravating and mitigating circumstances. There is clear and convincing evidence to support a finding of aggravating factors as follows: (1) prior disciplinary offenses; (2) refusal to acknowledge the wrongful nature of the conduct; and (3) illegal conduct. There is clear and convincing evidence to support a finding of mitigating factors as follows: (1) personal or emotional problems; (2) imposition of other penalties or sanctions (upon his conviction he was sentenced to 6 months' confinement, suspended with special conditions for 24 months); and (3) remoteness of prior offenses (1988 convictions).

## The Appropriate Discipline

We must now decide what the appropriate discipline is. Ketter contends *In re Kershner*, 250 Kan. 383, 827 P.2d 1189 (1992),

supports his position that any punishment other than published censure would be excessive.

Kershner was convicted of four felonies for violations of the Kansas Securities Act. In his disciplinary hearing, Kershner emphasized that there was a lack of specific intent to commit the crimes, thus reducing the gravity of the convictions. We examined the comments of Rule 8.4 in arriving at our decision to impose the punishment of published censure. Ketter contends that he, like Kershner, had no specific intent to commit the crime at issue. He cites testimony by the 17-year-old witness who said that Ketter did not see him approaching the vehicle. Thus, Ketter reasons he could not have had the specific intent to masturbate in front of the boy.

The Disciplinary Administrator argues that there is sufficient evidence for us to adopt the panel's recommendation of disbarment. The panel based its conclusion that Ketter should be disbarred under Standard 8.1 of the ABA Standards for Imposing Lawyer Sanctions. That Standard states: "Disbarment is generally appropriate when a lawyer intentionally or knowingly violates the terms of the prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession." It is undisputed that Ketter did not violate the terms of any prior disciplinary order. However, the Disciplinary Administrator contends: "Although not technically in the form of a disciplinary order, it certainly was incumbent upon the respondent to avoid the same sort of misconduct which led to his informal admonition on two prior occasions." The Disciplinary Administrator recognizes that Ketter's conduct does not clearly fit under Standard 8.1.

Alternatively, the Disciplinary Administrator argues Ketter should be suspended indefinitely. He cites Standard 8.2, which says: "Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury . . . ." Ketter's conduct appears to fit within this standard. He did not violate the terms of any prior disciplinary order; he is being reprimanded for conduct similar to that for which he has already been reprimanded.

The Disciplinary Administrator asked the panel to suspend respondent indefinitely from the practice of law. That recommendation was based on two cases: *Committee on Professional Ethics v. Vesole*, 400 N.W.2d 591 (Iowa 1987), and *Pistotnik*, 254 Kan. 294. *Vesole* involved a lawyer who exposed his genitalia to women while driving in his car on several occasions over an extended period of time. The Iowa Supreme Court found Vesole violated DR 1-102(A)(3) and (6) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude and any other conduct adversely reflecting on the respondent's fitness to practice law). 400 N.W. 2d at 592. Vesole was suspended for 3 years.

*Pistotnik* involved many allegations of disciplinary infractions in two separate formal complaints. The first complaint related to charges and convictions for many misdemeanor offenses over a period of years. Those crimes included: (1) public intoxication; (2) disorderly conduct resulting from a fight with a fellow law student (later dismissed); (3) driving under the influence (disposed of by diversion); (4) three counts of battery arising out of a fight in a night club involving his first wife (later reduced to one count of disorderly conduct); (5) battery of a former client (for which he was acquitted); (6) leaving the scene of an accident; (7) threatening a former secretary (later dismissed); (8) inflicting bodily injury (later reduced to disturbing the peace); and (9) battery of second wife. The panel found Pistotnik in violation of Rule 8.4(b), (d), and (g) (1993 Kan. Ct. R. Annot. 347) as to those crimes. Pistotnik was also found to have violated KRPC 1.3 (1993 Kan. Ct. R. Annot. 267), 1.4 (1993 Kan. Ct. R. Annot. 267) and 8.4 (c) and (g) in a companion complaint. The companion complaint arose out of Pistotnik's representation of a client. Pistotnik was suspended from the practice of law for only 1 year. 254 Kan. at 307.

It appears that the Disciplinary Administrator seeks an indefinite suspension because of Ketter's refusal to admit he has problems and seek help for them. Ketter is currently in some type of therapy, but only because it is a special condition of his suspended sentence. The panel was correct in observing that the only time in Ketter's life he has sought help is when criminal charges were pending against him. Ketter's refusal to acknowledge that he has psycho-

logical problems and seek treatment for them is puzzling. Even his version of events, that he ended up sitting in his car in a busy public place with his pants off, suggests he is indeed troubled.

We are concerned about Ketter's lack of recognition of a problem and specific plan of treatment. Ketter informs us he is currently being treated by George Hough, Ph.D., ABPP, a licensed psychologist. Dr. Hough's letter of November 19, 1998, was submitted to the hearing panel. The letter is referenced in paragraph 17 of the panel report that we have set out in the opinion. Dr. Hough also said in his letter:

"I originally evaluated Mr. Ketter on 4/9/98, at which time I provided an in-depth evaluation of his condition for the Court. At that time, I deemed his condition treatable, and Mr. Ketter subsequently agreed to see me for treatment. Currently we are engaged in a modified psychoanalytic psychotherapy process. I find that Mr. Ketter has made excellent use of this treatment approach. He is invariably on time for his appointments, and has paid his bills promptly. In the sessions, he has openly explored the treatment issues with sincerity, candor, and a willingness to understand himself and change. His dedication to this ongoing work, which he understands to be a long-term process, has been commendable.

. . . .

"At this juncture, I discern no psychiatric barriers which would impede Mr. Ketter's capacity to continue the practice of law with the due diligence, safety, and competence required of the legal profession. I do not, at this time, assess him as posing a threat to himself or to others."

Subject to the following conditions, a majority of the court believes that Ketter's discipline should be suspended and that he be placed on probation for 3 years from the date of this opinion.

IT IS THEREFORE ORDERED that imposition of discipline against respondent, Robert W. Ketter, be suspended and that he be placed on probation for a period of 3 years from this date on the terms and conditions hereinafter set out:

1. He shall continue treatment with Dr. Hough or another clinical psychologist or psychiatrist approved by the Disciplinary Administrator. Reports from the treating professional concerning Ketter's treatment and progress shall be submitted at least monthly to the Disciplinary Administrator.

2. Dr. Hough or any other professional treating Ketter shall be furnished a copy of this opinion. We require that Ketter continue

to probe, with professional help, the cause or causes of his exhibitionist behavior.

3. He shall refrain from any further exhibitionist behavior.

4. He shall immediately report any charge resulting from any future exhibitionist behavior to the Disciplinary Administrator.

IT IS FURTHER ORDERED that if Ketter fails to abide by the conditions set forth herein, a show cause order shall issue to Ketter, and we will take whatever disciplinary action appears just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that costs herein be assessed to Ketter.

ABBOTT, J., not participating.

ROBERT J. LEWIS, JR., J., assigned▋

DAVIS, J., concurring and dissenting: I concur in the majority opinion with the exception of the discipline imposed. The majority concludes, after its analysis, that Ketter's discipline should be suspended and that he be placed on probation for 3 years from the date of the majority opinion. I respectfully dissent and believe the appropriate sanction in this case should be an indefinite suspension from the practice of law.

As the majority notes, Ketter is currently in some type of therapy, although it is difficult to determine from the record exactly what type of therapy is involved. It is apparent, however, that Ketter is in therapy only because it is a special condition of his suspended sentence. As the majority observes, the only time in Ketter's life he has sought help is when criminal charges were pending against him. The majority opinion states: "Ketter's refusal to acknowledge that he has psychological problems and seek treatment for them is puzzling. Even his version of events, that he ended up sitting in his car in a busy public place with his pants off, suggests he is indeed troubled."

In a prior disciplinary proceeding before the panel involving the same kind of activity, Ketter articulately represented to the panel that his problem was a one-time event which, if consideration were given to him, would never occur again. In that proceeding, the panel entered a favorable decision on his behalf, recommending informal admonition. However, one member of the panel dissented and would have instead required a more complete psychological assessment before imposing discipline. The dissent noted that while Ketter's appearance and preparation were "very polished," he failed to comprehend the nature of his conduct and its ramifications to others or to express remorse for his conduct.

The Disciplinary Administrator argued that Ketter should be suspended indefinitely. He cites Standard 8.2, which says: " 'Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury. . . .' " As the majority notes, "Ketter's conduct appears to fit within this standard."

The majority further quotes from the clear and convincing evidence to support findings of aggravated factors before the panel as follows: "(1) prior disciplinary offenses; (2) refusal to acknowledge the wrongful nature of the conduct; and (3) illegal conduct." The majority further notes that "Ketter's past attitude may have been cooperative, but that cannot be said about his present attitude. Ketter's present attitude is an example of his unwillingness to identify and confront his problems."

I believe significant opportunities have been presented to the respondent to alter his behavior or at least confront his behavior that has given rise to the charges in the present case. Any further opportunities, in my opinion, serve only to encourage respondent's unwillingness to identify and confront his problems.

MCFARLAND, C.J., and LEWIS, J., join the foregoing dissent.