No. 84,993

In the Matter of MARTIN D. GEEDING, *Respondent.*

(12 P.3d 396)

Opinion filed October 27, 2000.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the formal complaint for petitioner.

*D. Lee McMaster,* of Wichita, argued the cause for respondent, and *Martin D. Geeding,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Martin D. Geeding, alleging violations of Kansas Rules of Professional Conduct (KRPC) 1.7 (representing a client when the representation would be in conflict with another client) (1999 Kan. Ct. R. Annot. 321), and 1.8 (conflict of interest involving compensation from one other than the client) (1999 Kan. Ct. R. Annot. 325). We adopt and impose the panel recommendation of published censure.

Geeding is an attorney admitted to the practice of law in Kansas in 1987. He practiced law in Kansas for 10 years before the events leading to this published censure. (Geeding was suspended from practice for 1 year commencing December 8, 1995.) The facts are not in dispute.

The panel made the following findings of fact and conclusions of law:

"1.   Martin D. Geeding (hereinafter 'the Respondent') is an attorney at law [practicing in] Wichita, Kansas. The Respondent was admitted to the practice of law in the state of Kansas on September 30, 1987. Mr. Geeding practices law in the Geeding Law Office, a sole proprietorship with his father Wilbur Geeding.

"2.   Thomas N. Tuttle is President of SEI Residential, Inc. (hereinafter 'SEI'), a closely-held corporation. In addition to managing real estate properties, SEI is in the business of locating real estate foreclosure defendants through court filings, purchasing redemption rights from foreclosure defendants, and attempting to sell the foreclosed property during the redemption period. As an incentive in nego-

tiating the purchase of the redemption rights, Mr. Tuttle routinely offers to retain and to pay an attorney to represent foreclosure defendants in foreclosure cases.

"3.  In the early 1990's, Mr. Tuttle approached the Geeding Law firm about representing SEI in a variety of real estate matters. The Respondent and Mr. Tuttle reached an agreement about fees to be paid and, thereafter, the Respondent performed legal services for SEI. The Respondent represented SEI in eviction cases as well as in foreclosure cases where disputes arose regarding redemption rights.

"4.  On August 18, 1997, through its attorney, Charles E. Hoke, II, Capitol Federal Savings and Loan Association filed a foreclosure case against Craig D. Fletcher and Kimberly K. Fletcher, in the District Court of Sedgwick County, Kansas, as case number 97C2414.

"5.  After having learned that Craig D. Fletcher was a defendant in a foreclosure case in Sedgwick County, Kansas, Mr. Tuttle approached Mr. Fletcher in an attempt to purchase only Mr. Fletcher's right of redemption. At that time, Mr. Fletcher was in the midst of a divorce from Kimberly Fletcher and his employment situation was unstable. Kimberly Fletcher was not represented in the foreclosure action.

"6.  On August 28, 1997, Mr. Tuttle and Mr. Fletcher reached an agreement and they both executed a 'Contract to Purchase Redemption Rights.' According to the contract, Mr. Tuttle purchased Mr. Fletcher's redemption rights for $1,301. One dollar was to be paid at the time Mr. Tuttle and Mr. Fletcher signed the 'Contract to Purchase Redemption Rights,' an additional $300 was to be paid when Mr. Tuttle took possession of the house, and the remaining $1,000 was to be paid only in the event that Mr. Tuttle was able to close the sale of the property prior to the expiration of the redemption rights.

"7.  Also on August 28, 1997, both Mr. Tuttle and Mr. Fletcher signed a 'Contract for Legal Services.' The Contract for Legal Services was a pre-printed form distributed by SEI through Mr. Tuttle. Later, on September 5, 1997, the Respondent signed the same contract. According to the contract, the Respondent was to represent Mr. Fletcher in the case entitled *Capitol Federal Savings and Loan v. Craig D. Fletcher*, in the District Court of Sedgwick County, Kansas, as case number 97C2414. The contract also stated that SEI would be responsible for the payment of the legal services that the Respondent provided Mr. Fletcher in the foreclosure case.

"8.  Without having ever met or having spoken with Mr. Fletcher, on September 8, 1997, the Respondent filed an Answer in the foreclosure case on behalf of Mr. Fletcher claiming lack of jurisdiction, lack of sufficiency of process, insufficiency of service of process and requesting a discovery conference. At the time of filing the answer, neither of the defendants . . . resided in the residence that was being foreclosed upon.

"9.   Throughout his representation of Mr. Fletcher, the Respondent never spoke with Mr. Fletcher, either in person or by telephone. The Respondent's attempt to communicate with Mr. Fletcher was limited to (1) a telephone message left on an answer machine for Mr. Fletcher, (2) two letters addressed to Mr. Fletcher at his place of residence which may have contained enclosures sent to him regarding the foreclosure, and (3) a phone call to a woman at Mr. Fletcher's place of residence who was alleged to be Mr. Fletcher's girlfriend.

"10.   On September 30, 1997, in Sedgwick County District Court case number 97C2414, Mr. Hoke, the attorney for Capitol Federal, filed a Motion for Summary Judgment *which was set for hearing on October 30, 1997*. The Respondent never contacted Mr. Hoke, attorney for Capitol Federal, and therefore made no effort to work anything out for his client or to determine whether a deficiency judgment would be sought in spite of the fact that Mr. Hoke had written to Respondent on October 2, 1997, and again on October 27, 1997. Additionally, the Respondent did not contact Mr. Hoke regarding the Motion for Summary Judgment.

"11.   The motion for summary judgment was scheduled to be heard on October 30, 1997. At that time, the Respondent appeared and, after reviewing the Journal Entry of Judgment, asked Mr. Hoke to change one sentence of the language in the Journal Entry of Judgment. The original sentence read:
'The Court further finds that the defendants, Craig D. Fletcher and Kimberly K. Fletcher, are the defendant-owners of the real estate above described within the meaning of K.S.A. 60-2414(a) and 60-2414(q) and **are the sole persons** entitled to such defendant-owners' rights of redemption, which should be fixed at three months.'
   "With the Respondent's requested change, the sentence then read:
'The Court further finds that the defendants, Craig D. Fletcher and Kimberly K. Fletcher, are the defendant-owners of the real estate above described within the meaning of K.S.A. 60-2414(a) and 60-2414(q) and **they or their assignees are** entitled to such defendant-owners' rights of redemption, which should be fixed at three months.'

"12.   In addition to representing Mr. Fletcher in Sedgwick County District Court case number 97C2414, the Respondent also represented many other foreclosure defendants pursuant to similar contracts prepared by SEI which stated that the Respondent would represent the defendant in the foreclosure action and the legal fees for such representation would be paid by SEI. Those other foreclosure defendants who were represented by the Respondent include [12 named defendants.]

"13.   At the hearing on this matter, the Respondent and Mr. Tuttle testified that the purpose of the Respondent's representation of Mr. Fletcher was to protect him against a deficiency judgment. However, the Respondent did nothing in Mr. Fletcher's case prior to appearing at the hearing on the Motion for Summary Judgment to achieve that goal. The Respondent never contacted opposing coun-

sel, Mr. Hoke, to discuss the case. In fact, Mr. Geeding did not attend the Sheriff's Sale nor did he contact the plaintiff's attorney prior to the sale. Mr. Hoke testified that, had the Respondent contacted him, Mr. Hoke would have agreed not to seek a deficiency judgment on the Fletcher property if the Respondent would have agreed to an entry of judgment in the case.

"14. At the same time that the Respondent was representing Mr. Fletcher (and other foreclosure defendants), the Respondent also was representing SEI in other real estate matters.

"15. After executing the other contracts set forth in Disciplinary Administrator's Exhibits G through P, the Respondent would begin representation in the foreclosure cases often without having any personal contact or conversations with the defendant/client and without receiving any instructions or direction from the defendant/client about how to proceed; instead the Respondent would proceed merely relying on the language in the executed contracts that state 'Client empowers and fully authorizes Attorney to institute such legal action as may be advisable in the judgment and discretion of the Attorney and to effect a final settlement or compromise therein.'

"16. Mr. Geeding recognized that a potential conflict of interest was possible if any of the foreclosure defendants had wanted to reinstate their mortgage instead of proceeding with the foreclosure and stated that he understood that he would not be able to represent the foreclosure defendant against SEI at that point, and could not represent SEI either.

"17. All legal fees earned by the Respondent in the foreclosure cases were paid by SEI. In addition, if the legal fees requested by the Respondent were excessive by SEI's standards or were in excess of SEI's parameters, then SEI, according to Mr. Tuttle, would have terminated the Respondent and sought another attorney to assist the defendants in the foreclosure cases where SEI had purchased their redemption rights.

"18. On November 14, 1997, Mr. Hoke sent a letter of complaint to the Office of the Disciplinary Administrator alleging conflicts of interest as well as other violations of other Disciplinary Rules."

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. Kansas Rule of Professional Conduct (hereinafter 'KRPC') 1.7 prohibits lawyers from representing a client when the representation would be in conflict with another client. Specifically, KRPC 1.7 provides:

(A) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(B) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

*Id.* At the hearing, the Respondent admitted that, if Mr. Fletcher or any of the other mortgage defendants had wanted to reinstate their mortgages, then there would have been a conflict of interest. The Respondent asserted that, because mortgage defendants never seek to reinstate the mortgages, there was no conflict of interest in this case. The Respondent seems to believe that the end result somehow justifies the means used.

"Even assuming that what the Respondent said is true, the Respondent's argument lacks merit because the Respondent fails to consider the requirements of KRPC 1.7.

"In this case, the Respondent violated both subsections of KRPC 1.7. First, in violation of KRPC 1.7(a), the Respondent represented a client (Mr. Fletcher and the other mortgage defendants) when the representation of that client was directly adverse to another client (SEI). If Mr. Fletcher or any of the other mortgage defendants had wished to reinstate their mortgages, the representation of Mr. Fletcher or the other mortgage defendants would have been directly adverse to SEI. The potential for conflict clearly existed before the representation began.

"Furthermore, while the Respondent claimed that the representation of Mr. Fletcher would not adversely affect his relationship with SEI, the Respondent failed to obtain the consent from his client after consultation. The Respondent never consulted with Mr. Fletcher at any time. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.7(a).

"Second, the Respondent violated KRPC 1.7(b). In this case, the Respondent represented a client (Mr. Fletcher and the other mortgage defendants) when the representation of that client may have been materially limited by the lawyer's responsibilities to another client (SEI) and by the lawyer's own interests. The Respondent's representation of Mr. Fletcher may have been materially limited by the Respondent's responsibilities to SEI if Mr. Fletcher wanted to reinstate the mortgage. Additionally, even though the Respondent claimed that representation of Mr. Fletcher would not be adversely affected, the Respondent failed to disclose

the potential conflict to his client and to obtain the consent for representation in spite of the potential conflict from Mr. Fletcher prior to undertaking the representation.

"It was in SEI's best interest for the Respondent to file an answer, assert as many affirmative defenses as possible, to request a discovery conference and to essentially postpone the taking of a judgment, and thus the Sheriff's sale of the property, for as long as possible which would give SEI sufficient time to try to find a buyer for the property before the redemption rights expired. It would have been in the best interest of Respondent's client for the foreclosure to have been concluded as quickly as possible and for the Respondent to have protected the defendant/client from a deficiency judgment by communicating with opposing attorney about the sale. However, in this case, the Respondent never spoke with his client and never communicated with the opposing attorney, Mr. Hoke, about a deficiency prior to the Sheriff's Sale in spite of two letters written to the Respondent by Mr. Hoke. For the foregoing reasons, the Hearing Panel concludes that the Respondent also violated KRPC 1.7(b).

"2. KRPC 1.8(f) provides as follows:

(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client consents after consultation;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

*Id.* As KRPC 1.8(f) sets forth, there are certain circumstances under which it is appropriate to accept, from a third party, compensation for representing a client. However, in order to comply with the rule, a lawyer must satisfy subsections (1), (2), and (3).

"In this case, the Respondent was compensated for his representation of Mr. Fletcher (and the other mortgage defendants) solely by SEI. However, the Respondent failed to ensure that subsections (1) and (2) were satisfied. Prior to and during his representation of Mr. Fletcher, the Respondent never consulted with Mr. Fletcher. As a result, the Respondent did not obtain Mr. Fletcher's consent after consultation. Further, because the Respondent had an established relationship with SEI at the time he undertook representation of Mr. Fletcher and the other mortgage defendants, the Hearing Panel concludes the Respondent failed to ensure that there was 'no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship.' *Id.* As such, the Hearing Panel concludes that the Respondent violated KRPC 1.8(f)."

Geeding does not take exception to the final hearing report findings and recommendations. The panel recommended the sanction of published censure. In adopting that recommendation, the panel explored mitigating and aggravating circumstances:

## "RECOMMENDATION

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty violated.* In this case, the Respondent violated his duty to adequately protect against conflicts of interest.

"*Mental State.* Based upon the evidence presented at the hearing on this matter, the Hearing Panel concludes that the Respondent negligently engaged in the misconduct.

"*Injury.* While no evidence was presented that Mr. Fletcher (or any of the other mortgage defendants . . . suffered actual injury, there is ample evidence to conclude that a potential conflict of interest and thus a potential injury always existed for Mr. Fletcher and the other defendants represented by the Respondent.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been disciplined on two prior occasions. In May, 1994, the Respondent was informally admonished for having violated KRPC 1.4. On December 8, 1995, the Respondent was suspended from the practice of law in the state of Kansas for one (1) year for having violated KRPC 1.1, 1.2, 1.3, 1.4, 3.2, and Kan. Sup. Ct. R. 207. See *In re Geeding,* 258 Kan. 740, 907 P.2d 124 (1995).

"A Pattern of Misconduct. The Respondent's representation of Mr. Fletcher and the other mortgage defendants, in violation of KRPC 1.7 and 1.8(f), constitutes a pattern of misconduct.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent maintained that he committed no misconduct in his simultaneous representation of SEI Residential, Inc., and Mr. Fletcher (and the other mortgage defendants). The Respondent never recognized that, before he can represent Mr. Fletcher or any other similarly situated mortgage foreclosure defendant under such a contract, he must first obtain their consent after consultation with them about the potential conflicts of interest. *See* KRPC 1.7 and 1.8(f).

"Vulnerability of Victim. Clearly, Mr. Fletcher was a vulnerable victim. At the time that Mr. Fletcher entered in the 'Contract for Legal Services' he was in the

midst of divorce, had lost his home, and needed money because he was unable to make sufficient wages to cover his expenses. In addition, at least one of the other mortgage defendants was particularly vulnerable. Mr. Shue suffered from a disability, and as such, Mr. Shue's son, Randolph Shue, had obtained a power of attorney to act in behalf of Mr. Shue.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas in 1987. Keeping in mind that the Respondent was suspended from December 8, 1995 through December 7, 1996, at the time the Respondent entered into Mr. Fletcher's 'Contract for Legal Services,' the Respondent has been practicing law for 9 years.

"Mitigating circumstances are any consideration or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstance present:

"Remoteness of Prior Offenses. The Respondent's previous discipline was predicated on findings of violations of KRPC 1.1, 1.2, 1.3, 1.4, 3.2, and Kan Sup. Ct. R. 207. Because the violation of rules in this case are not the same as the rules violated in the previous disciplinary cases, the Hearing Panel concludes that the prior offenses were remote in character from the instant offenses.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered Standard 4.33. That standard provides, in pertinent part:

"Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client . . . will adversely affect another client, and causes injury or potential injury to a client.
*Id.* "In this case, the Respondent negligently failed to determine whether his representation of SEI Residential, Inc., would adversely affect Mr. Fletcher and the other mortgage defendants. Further, the Respondent failed to consult with and obtain consent from Mr. Fletcher and the other mortgage defendants regarding the potential conflict of interest. Finally, at a minimum, Mr. Fletcher and the other mortgage defendants suffered only potential injury.

"Unfortunately, it appears to the Hearing Panel that the Respondent does not understand how he can avoid a similar misconduct in the future. The Respondent, through his attorney, asserted that, if he is met with a similar situation in the future, he will avoid the current problem merely by sending a certified letter to the mortgage defendant rather than sending one by regular mail. There was no assertion that the Respondent understood that he must consult personally with the defendant. The Hearing Panel strongly urges the Respondent to refrain from engaging in representation that involves such a conflict of interest. If the Respondent decides to ignore that advice, the Respondent must recognize that, in order to represent two clients with competing interests, he must comply specifically with the requirements of . . . KRPC 1.7 and 1.8. In addition to the other requirements detailed in KRPC 1.7 and 1.8, the Respondent must consult with his clients. The Respondent must ensure that the client understands the conflict

or potential conflict of interest. Finally, the Respondent must obtain the consent of the clients after the consultation." [Footnotes omitted.]

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (1999 Kan. Ct. R. Annot. 235). The panel's findings of fact are supported by clear and convincing evidence and, with the conclusions of law, are adopted as the findings of this court.

We are concerned about Respondent's ability to practice law in an ethical manner in the future. In his first decade at the bar he has received a private admonishment, a one-year suspension, and now a published censure. Although we agree with the imposition of public censure, we question the "Remoteness of Prior Offenses" conclusion in the panel's "Recommendation" section of its report.

Remoteness and prior offenses as aggravating factors are referenced in *In re Ketter,* 268 Kan. 146, 154-55, 992 P.2d 205 (1999). We have not established a bright line rule either in time or the nature of the prior offense. The better approach is to consider the time and nature of prior offenses as an aggravating factor on a case-by-case basis. A caveat to Respondent: Do not take lightly the opportunity of continuing to practice that the sanction of published censure in this case has extended to you.

IT IS THEREFORE ORDERED that the respondent, Martin D. Geeding, be and he is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (1999 Kan. Ct. R. Annot. 210) for his violations of the KRPC.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the costs of this action be assessed to the Respondent.